482 A.2d 921

# The BALTIMORE AND OHIO RAILROAD COMPANY

v.

## Robert L. BOWEN.

### No. 1595, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Nov. 7, 1984.

Ransom J. Davis, Baltimore, with whom were H. Russell Smouse and Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, on the brief, for appellant.

Henry B. Ford, Baltimore, with whom was Risselle Rosenthal Fleisher, Baltimore, on the brief, for appellee.

Argued before MOYLAN and LISS *, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), specially assigned.

MOYLAN, Judge.

In this case, we are called upon to decide the proper allocation of the burden of proof in a handicap discrimination case.

The appellant, Baltimore and Ohio Railroad Company (B & O), appeals from the decision by the Circuit Court for Baltimore City affirming a ruling by the State Commission on Human Relations, dated June 9, 1981, that B & O had unlawfully discriminated against the appellee, Robert L. Bowen, by refusing to hire him as a railroad carman helper because of a physical handicap, in violation of Md.Ann.Code Art. 49B, § 16 (1957, 1979 Repl.Vol.).

In September, 1977, B & O rejected Bowen for employment as a carman helper following a pre-employment physical examination performed by Dr. Gilbert Carouge, presently Chief Medical Officer for B & O. The examination, which included x-rays, revealed the presence of a bullet that was lodged in Bowen's third lumbar vertebra. Bowen had sustained the gunshot injury while serving in the United States Army, although he was off-duty and off-base at the time. During exploratory surgery, an Army surgeon had decided to leave the bullet where it was. The surgeon felt that the bullet posed no danger to Bowen. It was the opinion of Dr. Carouge, however, based on his personal knowledge of the duties required of carman helpers as well as upon the findings of an industry-wide study on the duties and physical demands of a carman and carman's helper, referred to as "The Lawshe Study," that such injury made

---

* Participated in the hearing and conferencing of this case but retired before the opinion was filed.

Bowen a potential candidate for serious back injury if he attempted to undertake the strenuous tasks required in the employment position sought.

As a result of his rejection for employment with B & O, Bowen filed a complaint with the State Commission on Human Relations alleging that B & O had unlawfully discriminated against him because of his physical handicap. Following an investigation, the Commission filed a statement of charges against B & O, and the matter was scheduled for a public hearing before a hearing examiner on October 29, 1980.

At the hearing, Bowen testified that he was a heavy equipment mechanic in the Army prior to the time he sustained the bullet wound in the stomach. After two weeks in the hospital and approximately 45 days of convalescing, he returned to that same job. After he was discharged from the Army in September, 1972, he was awarded a permanent partial disability, although he did not solicit it. Since his discharge from the Army, he has held several jobs which have involved heavy lifting. At the time of the hearing, he was employed with the C & P Telephone Company as a heavy supplies driver. He testified that when he applied for employment with B & O in September, 1977, he indicated on the employment application that he received disability benefits from the Army.

Since his injury, Bowen has never been placed under any restrictions by a doctor regarding the performance of any job. He testified that he works out at a health spa three days a week, lifts weights, rides a 750 Honda motorcycle, and is involved with karate. At the most, he suffers some minor discomfort in his upper back when he first gets up in the morning. Bowen testified that he had reviewed the duties of a carman's helper as set out in "The Lawshe Study" and could meet the physical demands of that job.

The hearing examiner admitted into evidence, over the objection of B & O, the written medical report of Dr. Edward R. Cohen, an orthopedic surgeon, whom Bowen had

consulted after being rejected for employment by B & O. The report, dated September 21, 1977, contained Dr. Cohen's opinion, based upon a physical examination and x-rays, that Bowen could be "gainfully employed in any desired job description without necessity for restriction."

At the hearing, B & O presented evidence as to the duties of a carman's helper through Claire E. Smithers, who has had approximately 30 years' experience as a railroader and who was then serving as manager of the Car Department, Michigan Division of the Chesapeake and Ohio Railway Company (like B & O, part of the Chessie System). Mr. Smithers testified that, in July, 1977, he participated in the preparation of "The Lawshe Study." He testified that the duties of a carman and carman's helper are substantially the same, except that a carman's helper assists the carman. He testified that carman helpers, as set forth in "The Lawshe Study," are occasionally required to lift objects not in excess of 150 pounds and to carry objects of more than 150 pounds and that they are frequently required to push objects over 100 pounds. He concurred in "The Lawshe Study" job description that a carman "[p]erforms various job tasks under all weather conditions and all hours of day and night involving lifting of heavy tools and equipment, often in crouching or awkward positions which create back injury potentials."

Dr. Carouge, who has been with B & O since 1948, testified that there was a danger that the exertion and strenuous activity connected with the chores of a carman's helper "might possibly dislodge" the bullet from the vertebra and thereby cause Bowen to suffer serious back problems. The dislodgement of the bullet could result in spinal cord damage and paralysis of the legs. Dr. Carouge testified that there was already some spur formation around the area of the body of the vertebra where the bullet was lodged, indicating early arthritic change in that area. He testified further that as the bullet entered the body there "could [also] have been" some damage to the invertebral disc—the soft tissue around the vertebral body—which was

not evident from the x-ray. This would enhance the danger of Bowen's developing a herniated disc, a frequent occurrence among railroad workers.

On June 9, 1981, the hearing examiner issued an Opinion and Provisional Order concluding that Bowen is a handicapped individual within the meaning of Art. 49B and that B & O had committed unlawful employment discrimination in refusing to hire him. The Commission, in a subsequent order entered on May 10, 1982, directed B & O to pay Bowen the sum of $25,210 as back pay, together with six percent annual interest.

An Appeal Board affirmed the decision of the hearing examiner in an order dated March 14, 1983. B & O thereafter filed an appeal in the Circuit Court for Baltimore City. On November 2, 1983, the circuit court issued a written memorandum and order affirming the Commission's order. It is from the decision of the circuit court affirming the ruling of the Commission that B & O now appeals to this Court.

On this appeal, B & O contends that the hearing examiner erroneously transferred the burden of proof from Bowen to B & O, requiring it to justify its refusal to hire Bowen by showing a "reasonable probability" of future injury if Bowen engaged in a heavy laboring job. Thus, contends B & O, it was placed in the position of having to disprove a factual proposition which Bowen should have been required to prove affirmatively—that "he had the ability to perform the duties of a carman helper for the present and for the foreseeable future." B & O further contends that the circuit court erroneously deferred to the decision of the Human Relations Commission on this allocation of the burden of proof and that the circuit court erred in concluding that the Commission's decision was supported by substantial evidence.

At the outset, we agree with B & O that the circuit court erred in deferring to the Commission as "the best judge of what standard of proof best suits their cases in the

absence of law to the contrary." Legal issues are ultimately for the courts to determine. An administrative agency, to be sure, has specialized knowledge and expertise in its area. In questions of statutory interpretation, therefore, a court will defer to an agency's interpretation or application of a statute soon after its passage. Such view taken of a statute by an administrative agency is "strong, persuasive influence in determining the judicial construction and should not be disregarded except for the strongest and most urgent reasons." *Baltimore Building & Constr. Trades Council v. Barnes*, 290 Md. 9, 14–15, 427 A.2d 979 (1981). Likewise, a court will defer to the interpretation an agency gives to its own administrative rules and regulations. *Maryland Commission on Human Relations v. Bethlehem Steel Corp.*, 295 Md. 586, 457 A.2d 1146 (1983). Neither was the case here. The question of the burden of proof in a handicap discrimination case is not one provided for by specific statute or regulation. As the hearing examiner pointed out, this was the first time the issue had arisen before the Commission. There was no reason, therefore, to defer to the Commission in the resolution of this purely legal issue. We hold, however, that the circuit court, in deciding this burden of proof question, reached the right result, albeit for the wrong reason.

The Maryland statute on unlawful discrimination, Art. 49B, § 16, does not expressly allocate the burden of proof and production of evidence in discrimination cases. B & O argues, however, that in cases involving handicap discrimination, as in other discrimination cases, the approach should be the one followed in the classic case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as more recently refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981):

> "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defend-

ant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

*Id.* 450 U.S. at 252–253, 101 S.Ct. at 1093 (citations omitted).

■ *McDonnell Douglas* involved a discrimination suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Title VII covers discrimination because of race, sex, religion, and national origin. In these situations, discrimination is not admitted, and there is no direct evidence of discriminatory intent. Once a *prima facie* case of unlawful discrimination is established by the plaintiff, an intermediate evidentiary burden is, therefore, imposed on the defendant to provide an explanation for what would otherwise appear to be unlawful discriminatory conduct. The plaintiff then has the burden of proving by a preponderance of the evidence that the legitimate nondiscriminatory reasons offered by the defendant were not its true reasons. The ultimate burden of persuasion as to discriminatory intent at all times remains on the plaintiff.

A strict *McDonnell Douglas* approach to handicap discrimination cases, however, would not be appropriate. Unlike other discrimination cases, discriminatory intent is not usually at issue in a handicap discrimination case. The employer usually admits that it did not hire the job applicant because of his handicap. Where that is the case, the three-step process of *McDonnell Douglas*, therefore, is not needed to establish discriminatory intent. The Supreme Court of New Jersey, in *Andersen v. Exxon Co.*, 89 N.J. 483, 446 A.2d 486 (1982), recognized that a strict *McDonnell Douglas* approach to handicap discrimination cases is "unnecessary":

"Unlike race, religion or sex discrimination cases, the defendant in a physical handicap discrimination case will

often admit that it denied the worker the job because of the physical handicap. Accordingly, in such cases it will not be necessary to go through all of the strict steps of the *McDonnell Douglas* formula to give rise to a presumption of unlawful discrimination. The defendant admits the disparate treatment, but claims it was justified." 446 A.2d at 494. In this case, B & O admitted that it did not hire Bowen because of the bullet lodged in his vertebra. It contended, however, that its action was justified because of the potential for further injury which the condition created. Art. 49B, § 16(a)(1) provides:

"(a) *It shall be an unlawful employment practice for an employer:*

(1) *To fail or refuse to hire* or to discharge any individual, or otherwise to discriminate against *any individual* with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's* race, color, religion, sex, age, national origin, marital status, or *physical* or mental *handicap unrelated in nature and extent so as to reasonably preclude the performance of the employment....*" (emphasis supplied).

This section implicitly recognizes that in certain instances an employer can refuse to hire an individual where a physical or mental handicap "reasonably preclude[s] the performance of the employment." The issue the hearing examiner had to resolve, therefore, was not whether there was discriminatory intent (which, in the more typical discrimination case, would be concededly unlawful) but whether the *admitted* discrimination was justified under Art. 49B, § 16(a)(1).

In this regard, B & O contends that Bowen should have been required to prove affirmatively that his handicap would not preclude the performance of the job both *now and in the future.* Bowen, on the other hand, contends that once he established that he was physically able to perform the job, B & O, by way of defense, properly had the burden of justifying its refusal to employ him by

showing a reasonable probability that the handicap would create a "future hazard."

The hearing examiner in this case recognized that the potential for future injury may in some cases disqualify a handicapped person from a position. Faced with no Maryland statutory or case law on the allocation of the burden of proof and on the production of evidence, the hearing examiner adopted the standard enunciated in *Bucyrus-Erie Co. v. State, Dept. of Industry*, 90 Wis.2d 408, 280 N.W.2d 142 (1979). In that case, a job applicant was denied employment as a welder by Bucyrus-Erie because a pre-employment physical examination revealed three congenital back defects. The company felt that work as a welder would substantially increase the likelihood that this individual would injure his back in the normal course of his job duties. In allocating to the employer the burden of proving this so-called "future hazard," the Supreme Court of Wisconsin there said:

"If the evidence shows that the applicant has a present ability to physically accomplish the tasks which make up the job duties, the employer must establish to a reasonable probability that because of the complainant's physical condition, employment in the position sought would be hazardous to the health or safety of the complainant or to other employees or frequenters of the place of employment."

280 N.W.2d at 150.

Applying that standard to the facts in this case, the hearing examiner found B & O's evidence that strenuous work might dislodge the bullet, impinge upon the spinal cord, and cause paralysis of Bowen's legs to be speculative. Dr. Carouge could not state what the probability was that the bullet might become dislodged. He testified only that there was a possibility that the bullet would become dislodged with strenuous work. The hearing examiner thus found that B & O could not demonstrate a future hazard with "reasonable probability" and that B & O had failed to establish facts which would show that Bowen could not

safely and efficiently perform the duties of a carman's helper.

■ We agree that once Bowen established a *prima facie* case of handicap discrimination—that he was physically able to perform the duties of a carman's helper—the burden of persuasion properly shifted to B & O to establish to a "reasonable probability" its defense that Bowen's physical handicap would create a future hazard to his health or safety. We are persuaded that only such an allocation of the burden of persuasion would accomplish the purpose of our unlawful discrimination law.

Cases in other jurisdictions have similarly held. The Maine Supreme Court had occasion to deal with this burden of proof question in *Maine Human Rights Commission v. Canadian Pacific Ltd.*, 458 A.2d 1225 (Me.1983). Maine, explicitly by statute, permits, as do various other states, handicap-based employment discrimination in individual cases when the employee's handicap renders him "unable to perform his duties or perform those duties in a manner which would not endanger the health or safety of the employee or the health or safety of others...." In allocating to the employer the burden of proving a reasonable probability of future injury, the court said:

> "It is our opinion that the Maine safety defense impos-es upon the employer the burden of establishing that it had a factual basis to believe that, to a reasonable proba-bility, the employee's physical handicap renders him un-able to perform his duties or to perform such duties in a manner which will not endanger his own health or safety or the health or safety of others.... Only by requiring that an employer have a strong factual basis for employ-ment discrimination against the handicapped can the State's declared policy in the MHRA, to protect the civil rights of the physically handicapped to a fair employment opportunity, be effectively carried out.

We also construe the statute to refer to an employee's future ability to carry out his employment duties. We do

not believe that the legislature intended to require an employer to employ a handicapped person when the employer could prove that it had a factual basis to believe, to a reasonable probability, that such employment would cause a future deterioration of the employee's health or endanger his safety or endanger the health and safety of others.... *An employer cannot, however, presently deny an employee an equal opportunity to obtain gainful employment on the mere possibility that his physical handicap might endanger his or others' health or safety at some indefinite future time."*

*Id.* at 1234 (citations omitted) (emphasis supplied).

In *Andersen v. Exxon Co., supra,* the New Jersey Supreme Court held that once an individual alleging handicap discrimination establishes that he is qualified both physically and otherwise, the burden is on the employer to come forth with evidence and prove that the job applicant's physical condition would reasonably preclude his performance of the job:

"Where it is obvious to the parties, as it was here, that physical qualifications are in issue, complainant should have the initial burden of proving that he or she was in fact qualified for the job in terms of the general qualifications and in terms of the physical qualifications. Only when those first two hurdles have been surpassed will the burden shift to the employer to demonstrate the affirmative defense that it reasonably arrived at the opinion that the worker's handicap precluded performance of the job.

... The complainant may respond to the defense by offering additional proofs to show that the employer did not reasonably arrive at its opinion. However, the employer retains the burden of proving that its opinion was reasonably founded."

446 A.2d at 494.

In *Sterling Transit Co. v. Fair Employment Practice Commission,* 121 Cal.App.3d 791, 175 Cal.Rptr. 548 (1981), a temporary employee was denied permanent employment

as a truck driver after a physical examination revealed a congential low-back problem. The court there held that the employer's evidence showing a "possibility" that the employee might endanger his health sometime in the future would not justify a refusal to employ the handicapped individual in "light of the strong policy for providing equal employment opportunity."

Various other cases have also placed the burden on the employer to show a reasonable probability that an employee's handicap would render him unable to perform his duties or to perform them without endangering his health or safety or that of others. *See Higgins v. Maine Central Railroad Co.*, 471 A.2d 288 (Me.1984); *Chicago & North Western Railroad v. Wisconsin Labor & Industry Review Commission*, 98 Wis.2d 592, 297 N.W.2d 819 (1980); *Dairy Equipment Co. v. Dept. of Industry, Labor & Human Relations*, 95 Wis.2d 319, 290 N.W.2d 330 (1980); *Kimmel v. Crowley Maritime Corp.*, 23 Wash.App. 78, 596 P.2d 1069 (1969); *Panettieri v. C.V. Hill Refrigeration*, 159 N.J.Super. 472, 388 A.2d 630 (App.Div.1978); *Montgomery Ward v. Bureau of Labor*, 280 Or. 163, 570 P.2d 76 (1977); *Chicago, M., St. P. & P. RR. Co. v. Dept. of Industry, Labor & Human Relations*, 62 Wis.2d 392, 215 N.W.2d 443 (1974). In these cases, the courts have recognized that it is only fair to impose such a burden of proof on the employer, who has special knowledge, expertise, and facts within his control not only to determine the qualifications for the particular job but also to know what the physical demands of that job would entail.

Furthermore, in other instances of employment discrimination, a similar burden has been placed on the employer where discrimination is established but the employer claims that it was justified. Where an employer contends, for example, that a certain characteristic in a particular job is a bona fide occupational qualification, the burden has been placed on the employer to show that such a characteristic is reasonably necessary to the performance of the job. *See Weeks v. Southern Bell Telephone & Telegraph Co.*, 408

F.2d 228 (5th Cir.1969); *Arritt v. Grisell,* 567 F.2d 1267 (4th Cir.1977); *Usery v. Tamiami Trail Tours,* 531 F.2d 224 (5th Cir.1976). Likewise, in handicap discrimination cases under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* the courts have held that once a plaintiff establishes a *prima facie* case of handicap discrimination, the burden of producing evidence as well as the burden of persuasion shifts to the employer to establish some legitimate defense. *See Treadwell v. Alexander,* 707 F.2d 473 (11th Cir.1983); *Pushkin v. Regents of University of Colorado,* 658 F.2d 1372, 1386–87 (10th Cir.1981); *Prewitt v. United States Postal Service,* 662 F.2d 292, 309–310 (5th Cir.1981).

On the other hand, we are not persuaded by B & O's reliance on the Kansas District Court case of *High v. Power Flame Division, Inc.,* 29 EPD ¶ 32,866 (1982), reviewing *de novo* a decision of the Kansas Commission on Civil Rights involving an individual who was rejected for employment as a laborer with Power Flame because of a back condition. B & O relies on language in that case to the effect that, "When the employer articulates a presumptively valid business motive for rejecting the applicant, ... the burden is upon the prospective employee to demonstrate that he or she is in fact capable of safely performing the duties of the job without creating a significantly increased risk of injury or injury to other employees or the employer's property." In that case, however, the court found that the employer "offered convincing medical evidence" "to a reasonable medical certainty" that the applicant's back injury made it substantially more likely that exposure to the lifting, pushing, and pulling required in the job sought would result in reinjury to the back. In contrast, the applicant "[a]t no time ... offer[ed] to undergo a physical examination or to provide evidence of her ability to safely lift, push, and pull the weights required of all employees holding positions for which Complainant was otherwise qualified." It was under those circumstances that the court held that the job applicant's handicap was not one protected by the statute and that Power Flame's refusal to employ her was not an unfair

labor practice. This was not the case of a mere "possibility" of future injury excusing an employer's discriminatory conduct or requiring the job applicant to go forward with evidence negating such "possibility."

■ With B & O's failure to carry its burden of persuasion, so falls its case. Since B & O failed to show anything more than a "possibility" of a "future hazard" and since it admitted through Dr. Carouge that Bowen was otherwise physically qualified for the position of carman's helper, it follows that there was substantial evidence to support the Commission's conclusion that B & O unlawfully discriminated against Bowen.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.