515 A.2d 781

**MASS TRANSIT ADMINISTRATION**

v.

**MARYLAND COMMISSION ON HUMAN RELATIONS.**

**No. 129, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Oct. 10, 1986.

**704**

Joseph S. Kaufman (Glenn E. Bushel on the brief), Baltimore, for appellant.

Sally I. Swann and Denise Noonan Slavin, Asst. Gen. Counsel (Risselle Rosenthal Fleisher, Gen. Counsel on the brief), Baltimore, for appellee.

Argued before WEANT, ALPERT and BLOOM, JJ.

ALPERT, Judge.

This case is somewhat peculiar in that the complainant, Vance Simms, successfully claimed that he was the victim of handicap discrimination despite the fact that he does not have the handicap that allegedly was the basis of the discrimination action. We explain.

In March 1978, Vance Simms applied for a job as a bus operator with the Mass Transit Administration ("MTA"). On May 9, 1978, the MTA required Mr. Simms to undergo a complete pre-employment medical examination. As a result of this examination, the MTA physician diagnosed Mr. Simms as hypertensive and his application for employment was rejected.[1]

---

1. The MTA physician took Mr. Simms' blood pressure and found it to be 160/80. The MTA's medical standards for bus drivers required an applicant's blood pressure to be no higher than 140/90. Therefore, the doctor told Mr. Simms that he failed the examination because his blood pressure was high.

On June 26, 1978, Mr. Simms filed a verified complaint with the Maryland Commission on Human Relations ("MCHR" or "the Commission") alleging that the MTA had discriminated against him by failing to hire him because of a physical handicap, hypertension. The Commission's staff conducted an investigation and issued the results of its investigation on May 26, 1980. A public hearing was held and the hearing examiner issued her Opinion and Provisional Order on December 4, 1981, in which she ruled that Respondent, MTA, had violated Article 49B by its failure to hire complainant, Mr. Simms, because of a physical handicap.[2] The Hearing Examiner denied the complainant back pay, however, on the ground that Article 49B could not be retroactively applied to provide monetary relief from a state agency. Appeals were taken from the Opinion and Provisional Order by the Commission and the respondent, and the Appeal Board affirmed the finding of a violation but entered an Order on April 11, 1983 in which it held that an award of back pay could be retroactively entered against a state agency. The case was remanded to the Hearing Examiner who held a hearing on June 2, 1983 and entered an Order on January 24, 1984 directing the respondent to pay to the Complainant the sum of $17,276.96 at 8% interest. The respondent noted an appeal from the hearing examiner's Order on February 23, 1984, and filed its Statement of Issues on Appeal on March 19, 1984, which the Commission answered.

A Board of three Commissioners was assigned by the Chairman of the Commission to review the appeal and concluded, in June 1985, without hearing oral argument, that the findings of the Board could not be reversed because no evidence of fraud, surprise, mistake, inadvertence or change of law or fact was presented to support the

---

**2.** The hearing examiner found that either the MTA discriminated against Mr. Simms on the basis of a perceived handicap or, if he actually suffered from hypertension, the MTA discriminated against him by failing to accommodate his condition.

reversal.[3] In addition, the Board determined that the hearing examiner did not err when he failed to deduct all the complainant's earnings during the two-year back pay period from the award,[4] and that the Hearing Examiner's award of interest in conjunction with the back pay award was proper in order to make the complainant whole.[5]

The MTA then noted an appeal from the actions of the MCHR to the Circuit Court for Baltimore City. On December 18, 1985, argument was heard and the court affirmed the MCHR decision with respect to its findings of fact. The court, however, modified the relief which the MCHR included in its Order of April 11, 1985, to the extent that Mr. Simms be promptly tested to determine whether he fulfilled all the requirements for the position. The court also struck the MCHR's remedy directed to unlawful discrimination against persons who were physically handicapped because the complainant, Mr. Simms, did not fall within that category. Other remedies were not altered. The MTA then noted its appeal to this court and raised the following issues:

I.  Whether the Commission had jurisdiction to hear the complainant's case.

II.  Whether the complainant established a prima facie case for handicap discrimination.

---

**3.** The Board explained that, "We have carefully reviewed the April 11, 1983 Order of the Appeal Board, and we conclude that the issues presented on behalf of the MTA were properly dealt with by that Board." *Simms v. Mass Transit Administration,* No. # 68–1633 at 2 (June 11, 1985).

**4.** Although the Complainant was found to have worked during the award period, the job the Complainant held was only a part-time job. Therefore, it was conceivable that the two jobs may have been held at the same time. The Respondent failed to carry its burden of proving that the Complainant could not have held the part-time job and the MTA job simultaneously. Accordingly, no error was committed in failing to consider the Complainant's earnings from this part-time job when calculating the damages to be awarded.

**5.** The 8% interest award, however, exceeded the maximum allowed by the Maryland Constitution (which is 6% per annum) and so the award was reduced to allow only a 6% interest rate.

III. Whether the MTA discriminated against the complainant on the basis of a physical handicap or a perceived physical handicap.

IV. Whether the MTA was under a duty to "accommodate" the complainant's high blood pressure.

V. Whether the doctrine of sovereign immunity precludes the imposition of a back-pay award against the MTA.

VI. Whether the court erred in awarding prejudgment interest.

VII. Whether the Commission failed to "endeavor to eliminate the discrimination by conference, conciliation, and persuasion" as mandated by Maryland Code Art. 49B, § 19(b).

The MCHR, appellee/cross-appellant, raises only two issues:

I. Whether the circuit court exceeded its statutory authority and usurped the administrative function of the Commission when it modified the order to hire the complainant by instead ordering him to undergo a complete physical examination to determine his eligibility for hire.

II. Whether the circuit court erred when it modified the Commission's order to cease and desist from discriminating on the basis of physical handicap.

As we believe that the MTA's blood pressure requirement was a bona fide occupational qualification and the complainant's application was rejected because of a perception that the complainant did not meet the physical qualification for the job, we hold that the complainant was not the victim of handicap discrimination and reverse the learned trial judge. The complainant was either not handicapped at all and could, therefore, not avail himself of the handicap discrimination law or his rejection based on his actual or perceived "handicap" of high blood pressure was lawful and not discriminatory because he failed to satisfy the requirements

for the job. Therefore, we need only address the material presented in the first three issues.

## I. *The Commission's Jurisdiction*

■ Appellant's first argument is that the complainant, Mr. Simms, did not suffer from a handicap within the meaning of article 49B and so the Commission was without jurisdiction to hear the complaint. The crux of the MTA's argument is that although high blood pressure may be a disease or disability, it is not a handicap within the meaning of the act. Accordingly, the MTA could not have discriminated against the complainant on the basis of a handicap as he was not "handicapped" in the article 49B sense of the term.

In the case at bar, the Commission expressly found as a matter of fact that "Vance Simms is a proper complainant as a person claiming to be aggrieved by alleged discrimination within the meaning of Article 49B...."[6] All parties, the Commission, and the circuit court appear to have assumed that hypertension is a physical handicap within the meaning of the employment discrimination statute.[7] Moreover, in its brief, appellant points to no authorities to contradict the Commission's determination that hypertension is an ailment which fits within the statutory definition of physical handicap.

The Maryland Code defines the term physical or mental handicap quite broadly:

Physical or mental handicap—The term "physical or mental handicap" means *any physical disability, infirmity, malformation or disfigurement which is caused*

---

**6.** The Commission also found, as a matter of law, that "all jurisdictional prerequisites for proceeding to public hearing have been met...." *Id.*

**7.** Indeed, the Commission has made this assumption in at least one other case. *See* Dorothy Dowdy v. MTA, MCHR No. E77–64 (Aug. 1980 and June 1983), *aff'd* by the Commission Appeal Board (Dec. 1981), *aff'd* by the Circuit Court for Baltimore City (Aug. 1985).

*by bodily injury, birth defect, or illness* including epilepsy, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impairment, deafness or hearing impairment, muteness or speech impediment or physical reliance on a seeing eye dog, wheelchair, or other remedial appliance or device; and any mental impairment or deficiency as, but not limited to, retardation or such other which may have necessitated remedial or special education and related services.

Md.Ann.Code art. 49B § 15(g) (1979) (emphasis added). The handicapped discrimination guidelines reflect this broad definition of the term handicapped by including within the definition individuals who are regarded as having a handicap or who have a past history or record of having a handicap, as well as those who are actually handicapped.[8] COMAR 14.03.03.03 (July 27, 1979).

At least two states have determined that hypertension is a handicap within the meaning of their employment discrimination laws. *American National Insurance Company v. Fair Employment and Housing Commission,* 186 Cal. Rptr. 345, 32 Cal.3d 603, 651 P.2d 1151 (1982); *Lipton v. Appeal Board,* 30 Fair Empl.Prac.Laws (BNA) 400 (N.Y. Sup.Ct.1979); *Arnot Ogden Memorial Hospital v. New York State Division of Human Rights,* 67 A.D.2d 543, 416 N.Y.S.2d 372 (1979).

The reasoning found in *American National Insurance Company, supra,* is instructive. In that case, the California court was asked to consider whether high blood pressure was a handicap or a medical condition. The court determined that the distinction could not be made as a general principle. "Common knowledge is ... high blood pressure is physical, and often it is handicapping." 186 Cal.Rptr. at 350, 651 P.2d at 1155. Therefore, it would be necessary to analyze each case separately to determine

---

**8.** Note that these guidelines were not in effect at the time of the incident giving rise to this suit.

whether the severity of the condition elevated it to the status of a handicap. *Id.* A bright line rule cannot be drawn.

We agree with the logic in *American National Insurance Company.* It would be imprudent for this court to determine that high blood pressure is always or could never be a handicap.

Since we believe that hypertension *could* be a handicap, we conclude that the Commission had jurisdiction to hear the complainant's case. The Commission has jurisdiction over all employment discrimination cases including those alleging physical handicap. Md.Ann.Code art. 49B, § 16(a)(1) (1979). The handicap alleged in this case was hypertension, a disability which is both physical and potentially handicapping. Complainant alleged that he was discriminated against because the MTA perceived him as an individual suffering from the handicap of hypertension. The Commission did not exceed its jurisdiction in accepting the case and did not err in determining that hypertension *may* be a physical handicap.

## II. and III. *Handicap—Was it Established?*

■ Appellant next contends that although the complainant, Mr. Simms, may have met the jurisdictional prerequisites to establish a claim, he failed to establish that he had a physical handicap within the meaning of Art. 49B, § 15(g) at the time of his disqualification and that he has, therefore, failed to establish a prima facie case for handicap discrimination. In *B & O Railroad v. Bowen,* 60 Md.App. 299, 482 A.2d 921 (1984), we held the burden of establishing a *prima facie* case of handicap discrimination rests on the complainant. Once the complainant establishes that he was physically able to perform the duties of the job sought and that his rejection was solely on the basis of his handicap (or perceived handicap), the burden of persuasion shifts to the employer to show to a reasonable probability that the complainant's physical handicap would create a future haz-

ard to the health and safety of either the applicant or the public at large. *Id.* at 309, 482 A.2d 921.

In the instant case, the complainant alleged that he was not hired because his blood pressure exceeded the maximum allowed by the MTA. His claim for relief was based on the assertion that failure to hire solely for this reason was handicap discrimination—or at least discrimination on the basis of a perceived handicap. The complainant, accordingly, put forth evidence from his personal physician as well as a physician from the American Heart Association to show that he did not suffer from hypertension. Thus, he introduced evidence that although his blood pressure was conceded to be above the MTA standards, it was within the high range of normal and would not be considered "hypertensive." In short, he demonstrated that he could perform the job without posing a threat to public health because he did not suffer from a disability or handicap. Moreover, the complainant additionally put forth evidence that the medical methods used by the MTA physician were inadequate to make a determination that his blood pressure was high. To wit, at least, a second blood pressure reading should have been made at least fifteen minutes after the first, and at best a series of readings should have been made over the next few days.

■ Having put forth evidence that he would be able to perform the job in spite of his "high" blood pressure, the burden of persuasion shifted to the MTA to show that the complainant's disqualifying condition could likely pose a hazard to the public. The Maryland statute governing discriminatory practices in the workplace states that:

It shall be an unlawful employment practice for an employer . . .

To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, age, national origin, marital status, or

*physical or mental handicap unrelated in nature and extent so as to reasonably preclude the performance of the employment.*

Md.Ann.Code art. 49B, § 16(a)(1)(1979) (emphasis added). It is, therefore, a valid defense to a discrimination allegation that the "handicap" (or disability) in question will interfere with the complainant's ability to perform the work adequately; in other words, that the job qualification is a bona fide occupational qualification. *See* COMAR 14.03.02.-06(f)(2) (1979).

In this regard, the MTA presented evidence that its standard of 140/90 as the maximum allowable blood pressure is a commonly accepted one in the medical community as appropriate for jobs comparable to that of a city bus driver. Hypertension is a disease which can have longterm effects on body organs and which can cause fainting, dizziness, drowsiness as well as create visual disturbances—all side effects which pose a life threatening danger to the public if suffered by a city bus driver.

In this case, the MTA refused to hire the complainant because the result of his medical examination indicated that Mr. Simms' blood pressure was higher than the maximum allowed for a person applying for a position as a bus driver. The hearing examiner expressly found that the MTA performed a complete medical examination upon the complainant and that the medical standards established by the MTA with regards to blood pressure were job related, and reasonable, and were promulgated in the public interest. In other words, the hearing examiner determined that the criteria constituted a bona fide occupational qualification.

In reviewing the validity of the Commission's findings, consideration must be given to the role of this court. We set out the criteria applicable in reviewing the decision of an administrative agency in *Comptroller v. World Book Childcraft*, 67 Md.App. 424, 508 A.2d 148 (1986):

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles

of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law." [*Ramsay, Scarlett & Co. v. Comptroller*] 302 Md. [825] at 834, 490 A.2d 1296 [1985].

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, *i.e.*, by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* At this juncture, the *Ramsay, Scarlett* court reminds us that "it is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inference." *Id.* at 835, 490 A.2d 1296.

Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether, ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]." *Id.* at 838, 490 A.2d 1296.

*Id.* 67 Md.App. at 438–39, 508 A.2d 148.

■ In this case, we think that a reasoning mind could have reached the conclusion found by the hearing examiner, that requiring bus drivers to have a blood pressure below 140/90 was not an arbitrary and capricious standard, but was a bona fide occupational qualification.

■ This case, therefore, presents an interesting paradox. If the complainant had been determined actually to be suffering from hypertension, then the MTA would be justified in rejecting him because their standards were found by the Commission to be reasonable and job related. No discrimination could have been found since the requirement

of low blood pressure was a bona fide occupational qualification. But the complainant was not determined to have been suffering from high blood pressure. He had no handicap or disability. Rather, he was erroneously perceived as lacking the necessary qualifications for the job. It is, thus, necessary for this court to consider the propriety of the complainant's cause of action under the discrimination laws.

The interpretive guidelines issued by the Commission indicate that to demonstrate that an individual is handicapped within the meaning of the Maryland discrimination laws, an individual must show that he:

A. *Has a physical,* mental, or emotional *handicap* as defined above; and *whose condition is demonstrable by medically accepted clinical or laboratory diagnostic techniques, and which constitutes or is regarded as constituting a substantial limitation of one or more of a person's major life activities.* Major life activities may be considered to include, but are not limited to, employment, transportation, adapting to housing, communication, self care, recreation, socialization, education, and vocational training.

B. *Has a record of such a handicap.* This means that an individual may be completely recovered from previous physical or mental impairment. It is included because the attitude of employers, supervisors, and co-workers toward that previous impairment may result in an individual's experiencing difficulty in securing, retaining, or advancing in employment. Examples might include mental retardation, heart attack victims, or cancer patients. *This includes individuals who may have been classified erroneously and may experience discrimination based on prior misclassification,* for example, persons incorrectly classified as mentally retarded or mentally restored.

C. *Is regarded as having such a handicap.* This refers to those individuals who are perceived as having a handicap, *whether an impairment exists or not,* but who

are regarded as handicapped by persons who have or may have an effect on the individual's securing housing or public accommodations, or securing, retaining, or advancing in employment, or all of these.

COMAR 14.03.02.03 (1979) (emphasis added). These guidelines were modelled after the Federal Rehabilitation Act of 1973, 29 U.S.C. § 706(7)(B). Accordingly, this court has looked to cases interpreting the federal statute for guidance in interpreting the Maryland Act. *B & O Railroad v. Bowen,* 60 Md.App. 299, 312, 482 A.2d 921 (1984).

In *Forrisi v. Bowen,* 794 F.2d 931 (4th Cir.1986), the court explained that the statutory language requiring a disability to be a "substantial limitation of a major life activity" before it may be considered a "handicap" indicates that the impairment must be significant. *Id.* at 933–34. In explaining the philosophy underlying the employment discrimination laws, the court said:

> The Rehabilitation Act assures that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. *It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared.* Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.

*Id.* at 934 (citations omitted) (emphasis added). Therefore, the *Forrisi* court held that the complainant had not established a *prima facie* case of handicapped discrimination where he was dismissed from his job due to acrophobia (fear of heights). "Far from being regarded as having a 'substantial limitation' in employability, Forrisi [the com-

plainant] was seen unsuited for one position in one plant—and nothing more." *Id.* at 935.[9]

In the case at bar, the complainant, Mr. Simms, has failed to prove that he is suffering from a disability "constituting a substantial limitation on one or more of a person's major life activities." COMAR 14.03.02.03(A) (1979). Nor has he shown that his denial was due to an erroneous classification or perception that he was suffering from a handicap which would *not* affect his ability to perform the job adequately. COMAR 14.03.02.03(B) and (C) (1979). Rather, Mr. Simms has avidly asserted that he was not handicapped at all (or suffering from any disability), but was rejected because the MTA physicians determined incorrectly that he did not have the necessary qualifications for the job. This is not a case of handicap discrimination or perceived handicap discrimination.

The record indicates that Mr. Simms has been able to perform, and has indeed performed, other jobs prior to and since his rejection by the MTA. His employability was not generally affected by the MTA's misdiagnosis. He was rejected from one job due to the conclusion (albeit erroneous) that he was not qualified for that job. The federal courts have repeatedly held that a case of handicap discrimination is not made by a single disqualification from a single job.[10]

---

**9.** A similar result was reached in *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088 (D.Hawaii 1980), in which the court

concluded that an impairment that interfered with an individual's ability to do a particular job, but did not significantly decrease that individual's ability to obtain satisfactory employment otherwise, was not *substantially* limiting within the meaning of the statute. *Id.* at 1099–1100. *See also Jasany v. United States Postal Service,* 755 F.2d 1244, 1248–52 (6th Cir.1985) (plaintiff failed to meet burden of proving an impairment that substantially limits a major life activity, an essential element of a prima facie case of handicap discrimination, where plaintiff stipulated that his disability had. not interfered with his ability to perform past jobs or certain tasks on this job); *Tudyhan v. United Airlines,* 608 F.Supp. 739, 746 (D.C.Cal.1984) (person who exceeded the maximum weight for a flight attendant due to body building program held not limited in a major life activity because he is only prevented from qualifying for a single job).

**10.** As the *Jasany* court explained:

We, therefore, hold that Mr. Simms has failed to meet his burden of establishing a prima facie case of handicap discrimination. The blood pressure standards set by the MTA for bus drivers were found to be reasonable and job related. Thus, denial of applications, such as Mr. Simms', based on failure to qualify under those standards would be both reasonable and lawful (and would not constitute discrimination based on either a handicap or a perceived handicap). Whatever merit there may be to appellant's complaint that he was wrongfully rejected by the MTA based on an inaccurate perception that he had high blood pressure, that complaint has no support in the employment discrimination laws.

■ The handicap discrimination laws were narrowly tailored by the legislature to protect "otherwise qualified handicapped persons" from discrimination. The definition of handicap has been interpreted to include only those disabilities or perceived disabilities which seriously impair a person's ability to perform life's tasks, but which would not affect an individual's ability to perform certain jobs. The discrimination laws were not enacted to protect persons who are either not handicapped or who are not qualified for a job by reason of failure to meet bona fide occupational qualifications. To affirm the Commission's finding of perceived employment discrimination in this case would wreak havoc with the intent of the employment discrimination laws. Such a holding would create a cause of action of

---

The ALJ had reasoned that focusing on particular fields rather than on employability in general would lead by way of illustration to the anomalous result that individuals too slow to play professional football or too short to play basketball would be able to surmount the initial burden of demonstrating that they were handicapped individuals in challenging their exclusion from those jobs. The *Black* court responded that the ALJ's concerns were misplaced, since those individuals would not be protected by the Act, not because their "impairment" did not substantially limit their employability, but because they were not capable of performing the particular job in question and hence were not "qualified handicapped individuals."

55 F.2d at 1249.

employment discrimination in every case where an employer determines that an applicant does not have the physical qualifications to perform the job. We are not prepared to expand the law so radically, and so we will reverse the lower court's holdings.

JUDGMENT REVERSED WITH INSTRUCTIONS TO THE CIRCUIT COURT FOR BALTIMORE CITY TO VACATE THE HUMAN RELATIONS COMMISSION'S ORDER OF JUNE 11, 1985. APPELLEE TO PAY THE COSTS.