586 A.2d 37

**MARYLAND COMMISSION ON HUMAN RELATIONS**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

**No. 395, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Feb. 27, 1991.

Sally L. Swann, Asst. Gen. Counsel (Michael L. Foreman, Gen. Counsel, on the brief), Baltimore, for appellant.

Burton H. Levin, Asst. City Sol. (Neal M. Janey, City Sol., on the brief), Baltimore, for appellee.

Argued before MOYLAN and BLOOM, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

JAMES S. GETTY, Judge (Retired), Specially Assigned.

The issue presented in this case is whether an employee, who becomes mentally handicapped during the course of her employment and thereby disabled from performing the essentials of the job for which she was hired, is, by virtue of Maryland Ann.Code Art. 49B, § 16, nevertheless entitled to continued employment in a position which does not require her to perform the essential tasks of the job for which she was originally hired.

Article 49B, § 16(a)(1), provides that:

(a) It shall be an unlawful employment practice for an employer:

(1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, age, national origin, marital status, or physical or mental handicap unrelated in nature and extent so as to reasonably preclude the performance of the employment.

## Background

Rose Thurman worked as a police officer in Baltimore City from June 12, 1979, until her termination on July 17, 1981. Under the provisions of Section 16–18 of the Code of Public Local Laws for Baltimore City (1979 ed.), Baltimore City Police Officers who are determined to be disabled, may be involuntarily retired if they have not obtained five years service.

On April 5, 1981, while off duty and in a state of depression, Mrs. Thurman called a fellow officer and expressed to him suicidal thoughts. The officer went to her house, retrieved her service revolver, and, on orders of his superiors, placed her on medical leave. The Chief Police Physician, Dr. Daniel Wilfson, referred Mrs. Thurman to Dr. Michael Potash for a psychiatric evaluation. Dr. Potash examined Mrs. Thurman on April 10, 1981, and noted in his mental status examination that Mrs. Thurman exhibited slurred speech and an extreme emotional liability and that she was distraught. Dr. Potash also noted her drunken condition. Mrs. Thurman denied having a drinking problem, but admitted to drinking the night before. At the time of this examination, Mrs. Thurman was separated from her husband who had frequently beaten her. She also had recently learned that her mother had cancer. Compounding this stressful situation was the fact that she was estranged from her father, that her brothers had personal difficulties, and that her children, four of whom were teenagers, were "acting up." Based on his observation of Mrs. Thurman and his evaluation of her history, Dr. Potash concluded that

she was likely to remain emotionally disturbed for a long period of time and that she would not be capable of performing full police duty in the foreseeable future.

After Dr. Potash's evaluation, Mrs. Thurman was referred to five police physicians, which is required under Sec. 16–18 of the Code of Public Local Laws for Baltimore City. The interviews with the five physicians were cursory, lasting for approximately ten minutes. Thereafter, the physicians found Mrs. Thurman unfit to serve. To counter what Mrs. Thurman believed to be an incorrect evaluation, she visited the East Baltimore Community Corporation Medical Center on May 7, 1981. There, Dr. Robert F. Fenton, M.S.W., reported that she behaved appropriately and did not show any signs of depression.

On May 8, 1981, Mrs. Thurman visited the Church Hospital Corporation where she was examined by Dr. Wilhelm C. Baermann. He concluded that she had a normal physical status and was physically able to work. Dr. Ullal Laxman Mallya, a board certified psychiatrist, first examined Rose Thurman on May 18, 1981, at the Provident Community Mental Health Center. His diagnosis revealed that she suffered from a mild state of anxiety. This was defined as an anxiety disorder with symptoms such as impaired memory, backaches, restlessness, and sleeplessness. Dr. Mallya next saw her on May 27, 1981, and found that, while she was slightly anxious, she was relaxed, composed, and in good condition. His subsequent psychological tests on June 3, 1981, revealed that she was asymptomatic. On Mrs. Thurman's last visit to Dr. Mallya on August 11, 1981, he determined as a final diagnosis that she suffered from an adjustment disorder with features of anxiety. This was defined as a maladaptive reaction to an identifiable psychosocial stressor which occurs within a three month period from the onset of the stressor. The four stressors that were identified were (1) her mother's cancer, (2) difficulty with a brother, (3) problems with her children, and (4) domestic troubles with her husband.

Dr. Mallya communicated the improvements in Mrs. Thurman's condition to the Department. She was, however, discharged by the Baltimore City Police Department as "not capable of performing active duty as a police officer due to being emotionally incapacitated (not in the line of duty)."

Thereafter, Mrs. Thurman filed a complaint with the State of Maryland Commission on Human Relations alleging discriminatory termination of her employment.

### Commission Hearing

The hearing examiner concluded that Mrs. Thurman established a *prima facie* case of handicap discrimination (based upon the mental handicap of an adjustment disorder, testified to by Dr. Mallya) by showing that she was both physically and mentally capable of performing the duties of a police officer. The examiner then concluded, citing *B & O Railroad v. Bowen*, 60 Md.App. 299, 482 A.2d 921 (1984), that the burden then shifted to the appellee to demonstrate that Mrs. Thurman's handicap "would reasonably preclude the performance of the employment."

Citing Dr. Potash's long-term experience in working with police officers, the hearing examiner opined that Dr. Potash's opinion was entitled to greater weight than Dr. Mallya's. Accordingly, he decided that the appellee "has met this burden" of establishing that Mrs. Thurman's handicap would reasonably preclude the performance of the duties of a police officer.

The case did not end at that stage, however, because the hearing examiner resolved what he termed the "final issue" by holding that the appellee did not provide Mrs. Thurman "a reasonable accommodation" by offering her a limited duty position answering telephones. The examiner considered this failure to offer alternative employment as a violation of Article 49B. The appellee herein appealed and the Commission Appeal Board affirmed the examiner's decision.

### Trial Court Proceeding

The trial court reversed the decision of the Appeal Board citing the Board's conclusion that at the time of her termination Mrs. Thurman suffered a mental/emotional illness that rendered her unfit to perform essential police duties. The court held that the complainant must establish the mental abilities to perform the duties of the job sought and that the handicap was the sole basis of her rejection, quoting *Mass Transit Administration v. Commission on Human Relations,* 68 Md.App. 703, 515 A.2d 781 (1986). Since the Board's decision was not based upon substantial evidence, the trial court concluded that she was not an otherwise qualified person and there was no duty to accommodate her by providing alternative employment.

### Standard of Review

The standard and scope of review of the Commission's decision is set forth in the Maryland Administrative Procedure Act, Code (1984) § 10–215 of the State Government Article. Subsection (g)(3) provides that a reviewing court may

> reverse or modify the decision [of the agency] if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:
>
> (i) is unconstitutional;
>
> (ii) exceeds the statutory authority or jurisdiction of the agency;
>
> (iii) results from an unlawful procedure;
>
> (iv) is affected by any other error of law;
>
> (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
>
> (vi) is arbitrary or capricious.

In order to determine whether Ms. Thurman was incorrectly denied a right to accommodation, this Court must review the decisions of the Commission and its Appeal Board in the same way the circuit court has done. We

consider whether there was substantial evidence before the administrative agency on the record as a whole to support its conclusions. *State Election Bd. v. Billhimer,* 314 Md. 46, 58, 548 A.2d 819 (1988); *Supervisor of Assessments of Montgomery County v. Asbury Methodist Home, Inc.,* 313 Md. 614, 625, 547 A.2d 190 (1988). The reviewing court is not constrained to affirm the agency where its order is premised upon an erroneous conclusion of law. We may not, however, substitute our judgment for the expertise of the agency. *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 390 A.2d 1119 (1978).

### The Law

Article 49B does not expressly impose upon employers an obligation of "reasonable accommodation" for those individuals under physical or mental handicap. The guidelines adopted by the Commission on Human Relations, however, do impose such an obligation. *See* COMAR 14.03.02.-05(B)(1). The guidelines were modeled after federal regulations of the Department of Health and Human Services implementing the Federal Rehabilitation Act of 1973, 29 U.S.C. sec. 794. Accordingly, we look to cases interpreting the federal statute in interpreting the Maryland Act. *Mass Transit Administration v. Maryland Commission on Human Relations,* 68 Md.App. 703, 515 A.2d 781 (1986).

Section 504 of the Rehabilitation Act of 1973 prohibits a federally funded state program from discriminating against an otherwise qualified handicapped individual solely by reason of his or her handicap. The implementing regulations established by the Department of Health and Human Services define reasonable accommodation in the following terms:

84.12 Reasonable Accommodation.

(a) A recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would

impose an undue hardship on the operation of its program.

(b) Reasonable accommodation may include: (1) making facilities used by employees readily accessible to and usable by handicapped persons, and (2) job re-structuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters and other similar actions.

Under the federal scheme, as set forth above, the employer's duty to accommodate is limited to those handicapped employees who are "otherwise qualified." The regulatory definition of "qualified" means:

(1) with respect to employment, a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question. 45 C.F.R. Sec. 84.3(K)(1).

The United States Supreme Court interpreted and applied the implementing regulations set forth above in *School Board of Nassau County, Florida v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). The issues in *Arline* were whether a person afflicted with tuberculosis, a contagious disease, may be considered a handicapped individual and whether such individual is "otherwise qualified" to teach school. The Court answered the first issue in the affirmative and remanded for fact-finding as to the second issue. On remand, the Court provided guidance on the "otherwise qualified" issue, stating:

[The purpose of the Rehabilitation Act] "is to insure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or the ignorance of others." But "only those individuals who are handicapped and otherwise qualified are eligible for relief." Quoting *Southeastern Community College v. Davis*, 442 U.S. 397 [99 S.Ct. 2361, 60 L.Ed.2d 980] (1979),[1] the Court

---

**1.** In *Southeastern Community College v. Davis*, an individual with a hearing disability sought admission to a program leading to a degree as a nurse. She was held not to be an otherwise qualified handi-

defined an otherwise qualified person as "one who is able to meet all of the program's requirements in spite of his disability.... Accommodation is not reasonable if it either imposes undue financial and administrative burdens on a grantee ... or requires a fundamental alteration in the nature of [the] program." *Id.*

The Colorado Court of Appeals recently decided a discrimination case filed by a disabled police officer. We point out that a petition for a writ of certiorari is presently pending in the Colorado Supreme Court. *Coski v. City and County of Denver,* 795 P.2d 1364 (Colo.App.1990). Coski, a Denver patrol officer, suffered an injury which left her without the use of her legs. She was involuntarily retired and filed a complaint seeking reinstatement to a position within the department she could perform.

Under the applicable Colorado statutes, a handicapped employee may be discharged if there is no reasonable accommodation that the employer can make with regard to the handicap, the handicap disqualifies the person from the job, and the handicap has a significant impact on the job. Citing *Southeastern v. Davis, supra,* the Colorado Court of Appeals held that neither a fundamental alteration in the nature of the job nor the elimination of an essential job function can be considered a reasonable accommodation. Referring to the essential functions of a police officer, the Court added:

A police officer who cannot fire a weapon or make a forceful arrest is a danger to herself, other officers and the public.... If all of these officers were retained on the force, the number of positions available for able-bodied officers would be significantly reduced, thereby endangering public safety in an emergency that required full mobilization of the police force. In these circumstances we conclude that waiver of the weapon firing and

capped individual because of the extensive modifications necessary to accommodate her.

forceful arrest requirement is not a reasonable accommodation.

We have decided two cases involving the discrimination provisions of Article 49B, namely, *B & O Railroad v. Bowen*, 60 Md.App. 299, 482 A.2d 921 (1984), and *Mass Transit, supra*. In the former, Bowen was rejected for employment as a carman helper, a position requiring physical activity, because of a bullet lodged in his back which he sustained during military service. The bullet had not been removed, because the army surgeon did not believe it posed any threat to Bowen's future health. The B & O's medical officer thought that the nature of the carman's job could dislodge the bullet and result in serious injury to Bowen.

At issue in *Bowen* was the allocation of the burden of proof. We held that once Bowen established a *prima facie* case of handicap discrimination, *i.e.*, that he was physically able to perform the duties of a carman's helper, the burden of persuasion shifted to B & O to establish to a reasonable probability its defense that Bowen's physical handicap would create a future hazard to his health or safety. Since the B & O showed only a possibility of a future hazard, Bowen was the subject of unlawful discrimination.

█ This case establishes, however, that the initial burden rests with the alleged victim to establish that he is qualified to do the job at issue. Only when the complainant shows that he is qualified does the burden shift to the employer to establish that the handicap reasonably precludes the performance of the job. *Accord: Anderson v. Exxon Co.*, 89 N.J. 483, 446 A.2d 486 (N.J.1982), cited in *B & O*.

In *Mass Transit, supra*, the complainant was rejected as a bus driver when the transit authority diagnosed him as hypertensive. His blood pressure was 160/80 and the medical standard required an applicant's pressure to be no higher than 140/90. The complainant offered evidence that he was not hypertensive and his higher pressure was within the high normal range posing no threat to public safety.

The hearing examiner ruled that the employer violated Article 49B either by discriminating against the applicant due to a perceived handicap, or by failing to accommodate his condition if he suffered from hypertension. We reversed, stating:

As we believe that the MTA's blood pressure requirement was a bona fide occupational qualification and the complainant's application was rejected because of a perception that the complainant did not meet the physical qualification for the job, we hold that the complainant was not the victim of handicap discrimination and reverse the learned trial judge. The complainant was either not handicapped at all and could, therefore, not avail himself of the handicap discrimination law or his rejection based on his actual or perceived handicap of high blood pressure was lawful and not discriminatory because he failed to satisfy the requirements for the job.

68 Md.App. at 708, 515 A.2d 781.

*Conclusion*

■ Article 49B makes unlawful, as it relates to this case, the discharge of an individual under a mental handicap that does not reasonably preclude the performance of the employment. The holding of the hearing examiner, adopted by the Appeal Board, however, clearly sets forth that Mrs. Thurman, at the time of her discharge, was not qualified to perform the duties and essential functions of a police officer. The administrative opinion states:

No other employment is more concerned with public safety than that of police work. A police officer's work involves extreme stress in possible life threatening situations. Both the public and other police officers rely on a police officer to act appropriately in the most stressful situations. The danger of allowing an individual to carry a weapon and function in that capacity when that individual is not emotionally capable is patent.... Accordingly, the Hearing Examiner finds that the complainant was not

capable of performing full police duties at the time of her termination.

Having made the above determination, the case should have been concluded at that juncture, because, even with accommodation, Mrs. Thurman was incapable of performing the essential functions of a police officer. The fact that some precinct officer volunteered that he could have her answer the telephones, is irrelevant for several reasons. First, such an accommodation would require a fundamental alteration in the nature of the program, *Arline, supra,* and, second, nothing in the record establishes that the Baltimore City Civil Service Commission has ever established a light duty position for police officers answering telephones or engaging in any other similar activities.

■■■ The hearing examiner and the Appeal Board misconstrue *B & O v. Bowen, supra,* in deciding that the burden of establishing that Mrs. Thurman could not be accommodated was on the appellee, for the reason that she never established a *prima facie* case of discrimination which required her to show she could perform the essential duties of a police officer. The examiner and Appeal Board, we repeat, explicitly so found.

We also note that another administrative regulation applicable to this case, referred to by Judge Ward and ignored by the appellant, COMAR 14.03.02.06(7)(1), authorizes an employer to "... take action otherwise prohibited under these regulations when mental and physical ability is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business."

■■■ We hold that Article 49 prohibits discharge only if a reasonable accommodation would enable the handicapped person to perform the essential functions of the position the person involved was hired to perform. The trial judge did

not substitute his judgment for that of the agency and his decision is affirmed.[2]

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

---

2. Appellant cited nine instances where police officers with physical or emotional problems were either retired or placed on light duty. Eight of the nine had more than five years service and could not be legally terminated. The only individual with less than five years service was discharged. Mrs. Thurman had been employed for 25 months.