**VULCAN PIONEERS, INC., et al., Plaintiffs,**

v.

**NEW JERSEY DEPARTMENT OF CIVIL SERVICE, et al., Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**STATE OF NEW JERSEY, et al., Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**STATE OF NEW JERSEY, et al., Defendants.**

Civ. A. Nos. 950–73, 77–2054 and 79–184.

United States District Court,
D. New Jersey.

June 21, 1984.

---

Vickie Donaldson, East Orange, N.J. for plaintiff Vulcan Pioneers, Inc.

Gerald F. George, U.S. Dept. of Justice, Employment Litigation Section, Washington, D.C., for plaintiff United States.

Lucille Cammarota, Asst. Corp. Counsel, Newark, N.J., for City of Newark.

David I. Fox, Fox & Fox, Newark, N.J., for Newark Firemen's Benev. Ass'n.

Michael L. Prigoff, Lebson & Prigoff, Englewood, N.J., for N.J. Firemen's Benev. Ass'n.

Mark Fleming, Deputy Atty. Gen., Trenton, N.J., for State of N.J.

David Solomon, Schneider, Cohen & Solomon, Jersey City, N.J., for Jersey City Firefighters Local 1066, IAFF, AFL–CIO.

## MEMORANDUM OPINION

SAROKIN, District Judge.

This is an application to have the court vacate its previous order in this matter predicated upon the recent decision of the United States Supreme Court in the matter of *Firefighters Local Union No. 1784 v. Stotts,* —— U.S. ——, 104 S.Ct. 57, 78 L.Ed.2d 76 (1984).

This court had previously ruled that in the event of layoffs, minority persons hired pursuant to the Consent Decree should be protected so that minority representation would continue in the same proportion after such layoffs as existed before. *Vulcan Pioneers, Inc. v. New Jersey Dept. of Civil Service,* 588 F.Supp. 716 (D.C.N.J.1984). Further, the court, in an effort to recognize and protect the rights and interests of the more senior personnel who might be laid off as a result, provided a rationale and method to compensate them.

■ The first part of the court's ruling has been effectively overruled by the Supreme Court decision. The second part therefore has been rendered moot, since it would only be implemented if minority persons received preference and senior persons were displaced. The Supreme Court decision prohibits that eventuality from occurring. Therefore, the wisdom of this court's ruling or the lack of it may never be reviewed by an appellate court. The court trusts, however, that no one reading this court's opinion could help but conclude that it was a sincere effort to recognize the competing rights and interests involved and fashion a remedy designed to protect both.

■ As to the present application, the court agrees that its order must be vacated and that seniority rights must prevail over minority rights by virtue of the Supreme Court decision. But with this decision a heavy burden is placed upon all those who take comfort from it. The Supreme Court decision has given a potent weapon to municipal and state employers seeking to avoid affirmative action orders merely by not providing the necessary funds to hire or retain women or minority persons.

Those cities or states bent upon continuing discriminatory practices can continue to do so under the guise of economic reductions. It is unlikely that the courts would ever be able to direct where and how a municipality or a state should devote its budget. Although these actions clearly could be challenged on the ground that they were not taken in good faith, such allegations will be extremely difficult to prove.

The courts have been roundly criticized for injecting themselves into these disputes and for frequently imposing hiring and promotion goals where the parties have failed to agree. The unions have complained because even where agreements have been reached, they have been neither present nor represented. The intercession of the courts in these matters has been caused by the abdication of responsibility by the governmental entities involved, the private sector employers, the unions and the non-minority workers themselves.

If the employers, both public and private, and the unions and their members truly wish to end judicial intrusion into the areas of employment, promotion and layoffs, then the time has come for them to take the initiative and accept their responsibility to eradicate the remnants of slavery. Affirmative action decrees would never have been necessary were it not for the fact that the municipalities and unions here involved perpetuated discriminatory practices in hiring and promotions. The non-minority firefighters and the unions who represent them resisted layoffs in this matter on the ground that they were blameless and innocent of any wrongdoing. But, in reality, they know better. If they have not directly caused the discrimination to occur, many certainly have condoned it by their acquiescence, their indifference, their attitudes and prejudices, and even their humor.

Discrimination has existed for years in the fire and police departments throughout this country. But for the enactment of the Civil Rights Acts and their enforcement, little would be changed. Left to their own devices and absent affirmative action decrees, it is unlikely that the historical patterns of discrimination would have been substantially altered. As the court stated in its earlier opinion, affirmative action plans, with all of their deficiencies, imperfections, and inequities, have accomplished a great deal in eradicating discrimination.

■ The Supreme Court opinion prohibits a court from preferring minority rights over seniority rights. It does not, however, prohibit the parties themselves from reaching an accommodation of those rights. There need not be a choice between the two, unless those involved are unwilling to recognize the rights and legitimate claims and viewpoints of the other.

Nothing in the Supreme Court decision prevents sharing the work week in order to prevent layoffs, rotating promotions, providing by agreement for minority and female hiring, training and recruitment, or finding other creative means to protect and advance the rights of women [1] and minorities. Every day of the week labor and management sit, negotiate and agree despite the divergence of their respective needs and views. There is no reason why women and minorities cannot be added to the bargaining process and their rights, needs and views considered and resolved.

Merely for the present work force (now protected by seniority) to absolve themselves of accountability because they did not directly cause harm to those who have suffered under the yoke of discrimination, is not enough. They are beneficiaries of the system. They now hold jobs denied to women and minorities. They and their unions will be blameless only if they actively engage in efforts to remedy the present situation.

Under the Supreme Court's decision, in the event of layoffs, women and minorities will be the first to go. Those who remain must search their consciences and decide whether that is a result which they applaud or decry. If it is the former, they should cease hiding behind their protestations of

---

1. Although the case before this court does not involve women's rights, those women who have been recently hired pursuant to an affirmative action decree will suffer the same adverse impact as minorities.

innocence; if it is the latter, they should step forward and take up the torch of affirmative action themselves.

The Supreme Court's declaration that minority rights cannot supplant seniority rights is not the end of the matter, but rather the beginning. In vacating its prior order in this matter the court directs the parties to develop an agreement regarding layoffs not inconsistent with the Supreme Court ruling. That decision does not relieve this court or the parties of the responsibility for protecting the rights of women and minorities and attempting to preserve the gains achieved. This court challenges the cities, the firefighters, their unions, and the state and federal governments to prove that they are not motivated by prejudice, but rather by a sense of good will and recognition of the rights of all women and minorities to work, to advance and to attain the same job security accorded to white males by virtue of the Supreme Court decision.

An appropriate order will issue.