549 A.2d 753

MONTGOMERY COUNTY, Maryland

v.

Joseph R. ANASTASI, et al.

No. 127, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Nov. 4, 1988.

Linda D. Berk, Sr. Asst. County Atty. for Montgomery County (Clyde H. Sorrell, County Atty. for Montgomery County, on the brief), Rockville, for appellant.

George B. Driesen, Washington, D.C., for appellees.

Argued before BISHOP, BLOOM and POLLITT, JJ.

BISHOP, Judge.

The appellees filed a complaint with the Montgomery County Merit System Protection Board ("the Board") in which they challenged the legality of the promotion procedures followed by the Montgomery County Police Department. The Board upheld the procedures and the complainants filed an appeal with the Circuit Court for Montgomery County (Weinstein, J.) which reversed the Board. We now affirm the decision of the circuit court.

Montgomery County raises three questions:

I. Did the Board commit an *error of law* when it upheld the county police chief's reliance, during the promotion process, on personal recommendations from several senior staff members regarding a minority of the qualified candidates for promotion where no information was solicited or obtained on the remaining qualified candidates and where the candidates were not informed of the use of such personal recommendations?

II. In upholding the unregulated use in the selection process of personnel files and the use of outside persons,

other than the decision maker, did the Board act *arbitrarily* in their deviation from a prior ruling in which it held that the unregulated use of outside sources and personnel files in the promotion process violated County Regulations?

III. Was the Board *clearly erroneous* in upholding the validity of the selection process where the decision maker made use of a file containing outdated information adverse to that candidate but where the decision maker denied reading the outdated materials?

## Procedural Background

The appellees challenged the Montgomery County Police Department's ("the Department") promotion procedures by filing a grievance with the county personnel director. Appellees alleged that the Department violated the law when during their promotion process they considered information on some of the candidates which was not provided for in the Department's announced procedures and in their unannounced deviation from the Department's long established practice of promoting in strict test score order. The personnel director denied the complaint based upon his determination that the procedures were lawful because "the Chief of Police had the prerogative to select any individual in the highest rating category," and was not required to promote in numerical test score order. The Chief Administrative Officer affirmed, and an appeal was noted to the Merit System Protection Board. The Board in its decision titled Re: Appeal of Anastasi, Et. Al.—Case # 87-17 ("Anastasi") affirmed the Chief Administrative Officer and an appeal was noted to the circuit court. The circuit court reversed the Board's decision and remanded the case to the Board. The court held that the promotion selection procedures followed by the Department violated the County Code and County Personnel Regulations, and that the Board acted arbitrarily in upholding the Department's procedures in contravention of the Board's previous decision in *Re: Appeals of E. Clarke, W. Fryer, J. Logan and J. Quinn,* ("Clarke") in MSPB Case No. 86-12, April 8, 1986. Mont-

gomery County now claims that the circuit court applied the wrong standard of review to the Board's decision.

## FACTS

In reviewing the decisions of administrative agencies, the Court must accept the agencies findings of fact when such findings are supported by substantial evidence in the record. *See, Baltimore Lutheran High School v. Employment Security Administration,* 302 Md. 649, 662, 490 A.2d 701 (1985). The parties have not challenged the Board's findings of fact and, accordingly, we accept those findings as the facts on appeal.

The appellees in this case are seventeen (17) members of the Department who sought promotions, eight to the rank of Master Police Officer, eight to the rank of Sergeant and one to Lieutenant. Each appellee completed a written examination and was placed on a promotion list for the position sought. The lists classified applicants as either "qualified" or by the more superior rating of "well qualified", depending on their numerical score. Each of the appellees scored in the "well qualified" category.

The past practice of the Department had been to promote from each list in the order of the candidates' examination scores; the highest scoring applicant being promoted first. Under a departmental change in policy, however, each of the appellees was passed over and a person of lower score but also on the well qualified list was promoted ahead of him. The Personnel Bulletins, supplied to each candidate, notified the candidates that "an eligible list will be established and each promotional candidate will be placed in alphabetical order in the adjective category of either 'well qualified' or 'qualified' . . . the promotional list will be used to fill vacancies. . . ." This notice was supplemented, for candidates for Master Police Officer, by a letter of January 2, 1986, which provided that "the appointing authority shall be free to choose any individual from the highest category based on that person's overall rating, character, knowledge,

skill, ability and fitness for the job as well as possible future advancement".

The Board found that, in the procedures actually followed, the Police Chief ("the Chief") solicited and received personal recommendations from several of his ranking subordinates (3 majors and a lieutenant colonel) concerning some of the candidates on the "well qualified" list. The Board adopted the conclusion of the fact-finder that, except for the promotion to lieutenant:

To the extent the Police Chief discussed promotional selections with his ranking subordinates (three majors and Lt. Col. Brooks) the process was casual, unmethodical and unrecorded. These subordinates submitted recommendations only for candidates whom they personally observed. Information on each and every promotional candidate was neither sought nor considered.

The Board also found that most of the appellees had minimal contact with the four officers with whom the Chief consulted; that the four officers had "no contact whatsoever" with at least two of the Master Police Officer applicants; and that "the immediate supervisors of the [appellees] were not contacted or consulted about [the] promotional capabilities" of the appellees. Finally, the Board found that:

[T]he Department of Police has utilized the numerical rank order for promotions below Police Sergeant since at least 1968. This is the first deviation from that practice at this level and this change was never officially communicated to the rank and file employees.

### Standard of Review

Judicial review of Merit Board decisions must be made in accordance with the judicial review standards as set forth in the Maryland Administrative Procedures Act, which is codified in the State Government Article at § 10–215 (1984), *see,* Montgomery Code, § 33–15(b) (1984), which requires in part:

(a) Filing authorized.—A party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section.

. . . . .

(g) Decision.—In a proceeding under this section, the court may:

. . . . .

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

. . . . .

(iv) is affected by any other *error of law;*

(v) is supported by competent, material, and *substantial evidence* in light of the entire record as submitted; or

(vi) is *arbitrary or capricious.*

The circuit court reversed the Board because of the court's findings that the Board's decision is affected by an "error of law", § 10–215(g)(3)(iv), and is "arbitrary and capricious", § 10–215(g)(3)(vi). We review the court's findings under each of these standards.

## DISCUSSION

### *Legality*

■ The Montgomery County Charter provides that: "The council shall prescribe by law a merit system for all officers and employees of the county government.... The merit system shall provide the means to recruit, select, develop, and maintain an effective, non-partisan, and responsive work force with personnel actions based on demonstrated merit and fitness."

Montgomery County, Md., Charter § 401 (1984).

The law enacted pursuant to the mandate of § 401 is Section 33–5 of the Montgomery County Code, 1984:

(a) *Statement of legislative intent.* It is the legislative intent of the county council that this article foster

excellence in the public service; high individual competence among employees; recognition that *respect for the employee* as an individual is first required for achieving such excellence and competence; and harmonious and efficient operation within the various components of county government.

(b) *Merit system principles.* The merit system established by this chapter encompasses the following principles:

.   .    .     .      .       .

(2) The recruitment, selection and advancement of merit system employees shall be on the basis of their relative abilities, knowledge and skills, including the *full and open consideration* of qualified applicants for initial appointment;

.     .      .       .        .

(6) All applicants to and employees of the county merit system shall be assured *fair treatment* without regard to political affiliation or other nonmerit factors in all aspects of personnel administration.

Montgomery County Charter, Montgomery County, Md. Code § 33-5 (1984) (Emphasis added).

None of the parties deny that the system of promoting based on numerical test score order, which was used prior to the 1985–1986 boards, was in full compliance with the above statutory mandates. Also, the appellees have not challenged the Department's right to rely on information other than test scores in the promotional system. Indeed, the Department's authority to do so cannot be disputed as there is no statutory mandate that the test scores control the decision and, in fact, the personnel regulations adopted pursuant to the Code § 33-7(b), specifically provide that:

[W]hen a position is to be filled, the appointing authority shall be provided an eligible list that has been certified by the personnel office. Subject to affirmative action objectives, *the appointing authority shall be free to choose any individual from the highest rating category based*

*on that person's overall rating, character, knowledge, skill, ability and physical fitness for the job as well as possible future advancement.* If an individual from a lower rating category is selected, the appointing authority must submit written justification for such action, which must then be approved by the chief administrative officer and made a part of the selection record.

Montgomery County Personnel Regulations, Section 5.6 (Emphasis added). The present dispute concerns whether the County Charter and Code impose legal constraints on the Department's ability to factor into the selection procedure the additional sources which the Chief utilized in making the promotional selections in the case *sub judice* and whether those additional constraints, if any, have been violated.

The Board itself has previously ruled on this specific issue. In *Re: Appeals of E. Clarke, W. Fryer, J. Logan and J. Quinn* —Case # 86–12, April 18, 1986, a thorough and well reasoned opinion, the Board addressed the use of "irrelevant personnel records" in the Department's promotion process and the use of additional persons in the final selection process where there were no guidelines or standards to assure fairness and consistency of review and selection. The Board summarized, in *Anastasi,* its holding in *Clarke:*

> The use of additional persons in the final selection process is an acceptable practice, provided guidelines or standards are provided to them to assure fairness and consistency of review and selection. There is no evidence of this in this case, which resulted in uncertainty as to how each person decided who to recommend for promotion. . . .

> Based on the total set of facts [in *Clarke* ], with particular emphasis on the maintenance and review of irrelevant documents, the Board ordered the promotion of the appellants.

Due to the Board's thorough and sound reasoning in *Clarke,* we will accord considerable deference to the conclu-

sions reached in that case. *Balto. Gas & Elec. v. Public Serv. Comm'n,* 305 Md. 145, 161, 501 A.2d 1307 (1986), *aff'g,* 60 Md.App. 495, 483 A.2d 796 (1984).

The Board declined to follow *Clarke* as precedent in the case *sub judice.* It reasoned that *Clarke* is inapplicable because in *Clarke* "prejudicial materials" were reviewed and it was that combination of prejudicial materials *and* the uncontrolled use of additional personnel in the final process which resulted in the *Clarke* decision. We do not find this reasoning persuasive and unlike the Board's decision in *Clarke,* we do not feel compelled to grant this conclusion any significant degree of deference. The Board's reasoning in *Anastasi* does not reflect the same thorough, well reasoned analysis which characterized *Clarke.*

Appellant argues, nevertheless, that this Court and the circuit court are bound by the Board's conclusions in *Anastasi* because "there is evidence [in *Anastasi* ] from which a reasoning mind could reasonably have reached the result the agency reached upon a fair consideration of the fact picture painted by the entire record" (citing, *Cason v. Board of County Commissioners for Prince George's County,* 261 Md. 699, 707, 276 A.2d 661 (1971)). Appellant's argument, however, misconstrues the standard which this Court must apply in its review of an administrative decision. The Court, in addition to applying the substantial evidence test,[1] as discussed by appellant, must also consider

---

1. "[S]ubstantial evidence" has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The scope of review is limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. In applying the substantial evidence test, the reviewing court should not substitute its judgment for the expertise of those persons who constitute the administrative agency from which the appeal is taken. The reviewing court also must review the agency's decision in the light most favorable to the agency, since decisions of administrative agencies are prima facie correct and carry with them the presumption of validity. Furthermore, not only is it the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences. *Baltimore Lutheran High School v. Employ-*

the *legality* of the decision, *Baltimore Lutheran High School v. Employment Security Administration*, 302 Md. 649, 662, 490 A.2d 701 (1985), because despite the level of deference which this Court is required to afford administrative decisions, "a reviewing court may always determine whether the administrative agency made an error of law.", *Board of Education of Montgomery County v. Paynter*, 303 Md. 22, 35, 491 A.2d 1186 (1985).

Based on the Board's own fact-finding in the case *sub judice* and according their ruling in *Clarke* its due deference we hold that the promotion process used in the case *sub judice* violated both the letter and the spirit of the Charter and the County Code and that the Board erred, as a matter of law, when it upheld that process. The *ad hoc* system of promotions used in this case, which the Board itself described as "casual" and "unrecorded", has the deficiencies of appearing to grant favoritism to those few individuals who were personally familiar with the decision makers and ignoring the announced procedures. This procedure is not a "personnel action based on demonstrated merit and fitness" as required by the County Charter. *See*, Montgomery County Charter, Montgomery County Md.Code § 401 (1984). It does not comply with the County Code requirements that the system of promotion foster "respect for the employee as an individual", Code § 33–5(a); that the system of advancement "be on the basis of ... relative abilities, knowledge and skills", Code § 33–5(b)(2); and that all employees "shall be assured of fair treatment," Code § 33–5(b)(6).

Appellant is correct in its contention that the County Personnel Regulations provide the Department with a great deal of discretion in promotional decisions. However, those regulations, which provide in part that the Chief is permitted to choose from among candidates "based on that person's overall rating, character, knowledge, skill, ability and

---

ment Security Administration, 302 Md. 649, 662–663, 490 A.2d 701 (1985) (citations omitted).

physical fitness for the job as well as possible future advancement," Montgomery County Personnel Regulations Section 5.6, must be read in harmony with the dictates of the County Charter and Code. These later two require that, in considering each of the factors enumerated in Section 5.6, the Chief must proceed by some *system* which ensures: fairness; rational, informed decision making; and compliance with the other mandates of both the Charter and the Code.

What makes the decision of the Board egregious are these two additional findings of fact:

In a February 3, 1982 report to the County Executive and the County Council concerning employment practices, this Board recommended "the Chief Administrative Officer should prepare and publish administrative procedures necessary to implement the comprehensive recruiting and examination program". The Board went on to say, ". . . These Administrative Procedures should clearly define the role (duties and responsibilities) of all persons involved and should contain detailed procedures and guidelines . . . It appears obvious to the Board that new Administrative Procedures have not been promulgated . . . Unless and until formal Administrative Procedures and guidelines are established, the Merit System will continue to be vulnerable to potential abuses . . ."

A review of the County's Administrative Procedures Manual revealed that AP 4-3 *Recruitment, Examination and Placement* was issued on May 16, 1973 and AP 4-9 *Certification of Occupational Class Eligible Lists* was issued on February 10, 1975. Even though the Personnel Regulations have undergone at least two major revisions (1980 & 1986), and the County was told in 1982 it needed new Administrative Procedures to be in compliance with those Regulations, the County has not issued any revised or new AP's related to recruitment and promotion.

The absence of the very procedures which the County was directed to prepare, publish and implement is the basis

and the reason the "potential abuses", to which the Board referred in 1982, have become realized in the case *sub judice.*

## *Arbitrary and Capricious*

■ The appellate courts of this State have not had an opportunity to address the issue of whether an alleged deviation of an administrative agency from the agency's prior decisions constitutes an arbitrary and capricious act under § 10–215 as found by the circuit court; however, the Federal courts have an abundance of decisions on point. These Federal cases are particularly informative in that they involve the application of 5 U.S.C. § 706 which is substantially similar to Md. State Government Code Ann. § 10–215.

The Federal decisions indicate that an agency is not locked forever into its prior decisions. As the U.S. Supreme Court noted:

> [W]e fully recognize that "[r]egulatory agencies do not establish rules of conduct to last forever," and that an agency must be given ample latitude to "adapt their rules and policies to the demands of changing circumstances."

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (citations omitted). On the other hand, 5 U.S.C. § 706, like Maryland's State Government Article § 10–215, requires that an agency's enforcement of their rules and policies not be so fluid as to become arbitrary and capricious. For this reason:

> "[A]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if any agency glosses over or swerves from prior precedents without discussion it may cross the line from tolerably terse to intolerably mute."

*Local 32, Am. Fed. of Govern. Emp. v. F.L.R.A.*, 774 F.2d 498, 502 (D.C.Cir.1985) (quoting *Greater Boston Television Corp. v. F.C.C.*, 444 F.2d 841, 852 (D.C.Cir.1970), *cert.*

*denied,* 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971). The courts then must scrutinize inconsistent administrative decisions to insure that the decisions represent an intentional change and not merely evidence of arbitrary and capricious enforcement. *See,* 463 U.S. 45, 44, 103 S.Ct. 2856, 2867; Md. State Government Code Ann. § 10–215(g)(3)(vi).

Applying the arbitrary and capricious standard to the case *sub judice,* we agree with the circuit court that the reasoning in the Board's decision wherein it distinguished the case *sub judice* from *Clarke* is inadequate. We agree with the Circuit Court that *Clarke* was indistinguishable from the case *sub judice* upon the very issue to which the Board referred in the finding of fact, *supra,* i.e., that if the process was to include consultations with others there should be "guidelines or standards ... to assure fairness and consistency of review and selection." The Circuit Court was correct when it found that:

> The Board sought to distinguish *Clarke* by noting that in *Clarke,* unlike *Anastasi,* prejudicial materials were reviewed and considered. This is not entirely correct since the Board [in *Clarke*] did not discuss its other finding in *Clarke,* namely, the need for guidelines or standards.... [T]he Board did not consider the Fact Finder's Report stating that the process the Police Chief followed during his discussion of promotional selections with his ranking subordinates was casual, unmethodical, and unrecorded. Furthermore, the Board did not address the fact that the only recommendations submitted were for those candidates who were personally observed; information on each and every promotional candidate was neither sought nor considered.

The Board has the specific authority to manage the County personnel selection procedures so as to insure that; "[t]he recruitment, selection and advancement of merit system employees shall be on the basis of their relative abilities, knowledge and skills, ..." Montgomery County Code, Montgomery County, Md., Code § 33–5(b)(2). In rendering opposite decisions based on indistinguishable facts, without

adequately explaining the basis for doing so, the Board has exercised this authority in an arbitrary manner in violation of Maryland State Government Article § 10–215(g)(3)(vi).

Because our treatment of the first and second issues are dispositive, we will not address issues III.

## CONCLUSIONS

Fashioning the appropriate remedy in this case is a difficult task. This Court faced a similar situation in *Andre v. Montgomery County Personnel Board*, 37 Md.App. 48, 375 A.2d 1149 (1977) where the Montgomery County Personnel Board found the complainants to have been wronged by the hiring practices of the County's Department of Recreation. The Board in *Andre* ordered the Department to institute remedial procedures but declined the complainant's requests for back pay and retroactive appointments. This Court in upholding the Circuit Court's affirmation of the Board stated:

> We believe that the Board did everything that could reasonably be expected of it when it directed the Chief Administrative Officer to "develop adequate safeguards ... [and] a policy statement should be issued ... prescribing the disciplinary action ... for failure to adhere to and abide by the Personnel Regulations." The Board action constitutes a remedy which is necessary, appropriate, and in the best interest of the County service. Mont. Co.Code § 33–25(x).

Clearly, based on the facts in the case *sub judice*, the history of this problem in Montgomery County, and the failure of the County to act, there should be some remedial action by the Board. Whether appellees here should receive some redress from the County, in the nature of back pay, promotion when openings occur or both, or something other than either of these, we are not in a position to say. Section 33–7(a), in pertinent part, provides:

> *Generally.* In performing its functions, the board is expected to protect the merit system and to protect

employee and applicant rights guaranteed under the merit system, including protection against arbitrary and capricious recruitment and supervisory actions, support for recruitment and supervisory actions demonstrated by the facts to be proper, and to approach these matters without any bias or predilection to either supervisors or subordinates. The remedial and enforcement powers of the board granted herein shall be fully exercised by the board as needed to rectify personnel actions found to be improper. . . .

*See,* County Charter § 401, *supra,* County Code § 33–5, *supra.*

Implicit in the remand by the Circuit Court to the Board is the expectation that the Board will take further action. In affirming the action of the Circuit Court, we will be explicit and suggest that the Circuit Court consider using its inherent powers and remand the case to the Board in order that the Board may provide some remedial action commensurate with its powers and authority, under the County Charter, the County Code and in accordance with this opinion.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.