618 A.2d 244

Alfred GAITHER

v.

ANNE ARUNDEL COUNTY, Maryland.

No. 506, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Jan. 11, 1993.

---

570

572

Francis J. Collins (Joel A. Smith and Kahn, Smith & Collins, PA., on brief), Baltimore, for appellant.

John F. Breads, Jr., Asst. County Atty. (Judson P. Garrett, Jr., County Atty., on brief), Annapolis, for appellee.

Argued before ROSALYN B. BELL, DAVIS and MOTZ, JJ.

MOTZ, Judge.

Appellant, Alfred Gaither, has been employed by appellee, Anne Arundel County (County), for many years. In 1989, Gaither was demoted from a grade 14 position, senior water plant operator, to a grade 9 position, utilities maintenance worker. On appeal, the Personnel Board of Anne Arundel County (Board) rejected Gaither's claim of handicap discrimination and upheld his demotion; the Circuit Court for Anne Arundel County (Rushworth, J.) affirmed that decision.

In 1978, while classified as a water plant operator in the Department of Utilities, Gaither was injured in a job related automobile accident and sustained injuries to his neck and back. Found to have a 12½% permanent disability by the Workers' Compensation Commission, Gaither returned to work but was placed on "light duty" status. In 1985 Gaither was reinjured on the job. As a result of this second accident, the Workers' Compensation Commission determined that Gaither suffered an additional 2½% permanent disability. After this second accident and until 1989, Gaither again returned to work in the same "light duty" status.[1]

---

1. Gaither was promoted to the position of senior water plant operator (grade 14) in 1988. It is undisputed that a water plant operator is automatically promoted to senior water plant operator when he or she passes the state administered written test for a Class IV license. For

In 1988, in response to scheduling problems, the Chief of the Bureau of Operations for the County Department of Utilities requested that the Personnel Department conduct desk audits for ten Utilities employees on "light duty" assignment. Gaither held one of these positions. The audits were designed "to identify specifically what ... roles [employees] were filling ..., and to determine from that what the proper grading of [each] position would be." As part of this desk audit, Gaither was asked to complete a job description form. On the form, Gaither listed his responsibilities as well as the amount of time he spent performing each duty. From the job description form as well as an on-site inspection of Gaither's performance by a personnel analyst, the Personnel Department determined that Gaither was not performing the duties of a water plant operator and, subsequently, decided that his position should be reclassified to a utilities maintenance worker at pay grade 9.

In June of 1989, Gaither was informed of the result of the desk audit. Gaither was given 60 days to search for another position in the County. When Gaither did not submit an application for another position, he was given the choice of accepting a demotion to utilities maintenance worker or being terminated. In August 1989, Gaither accepted the position of utilities maintenance worker with a corresponding decrease in salary of approximately $5,000 per year. Thereafter, Gaither challenged the reclassification and filed a grievance with the Board. Further facts are set forth within as necessary.

---

purposes of this opinion, the distinction between water plant operator and senior water plant operator is irrelevant and therefore, for brevity's sake, we use the term "water plant operator" when referring to Gaither's former job classification. The facts set forth within are based in part on a copy of the transcript of the administrative hearing, which is set forth in its entirety in the record extract. For some reason the original transcript, indeed the entire administrative record, was not transmitted with the record of the circuit court to this Court. The parties, however, do not assert that the copies of the transcript and relevant exhibits in the record extract are in any way inaccurate or provide an insufficient basis for determination of the issues presented here.

The Board upheld Gaither's demotion within the County Department of Utilities. Gaither then appealed this decision to the circuit court, which affirmed the Personnel Board's decision. Gaither raises the following questions on appeal:

1. In view of Anne Arundel County Code, art. 8, § 1–201(b), must all fresh water treatment plant operators employed by Anne Arundel County be able to lift 50 lb. bags of lime on a day-to-day basis, or is the Circuit Court's finding contrary to what is truly a bona fide occupational qualification for fresh water treatment plant operators?

2. Could the Personnel Board and the Circuit Court find under applicable authority that the County could so summarily abandon its ten year old job functions accommodation of Gaither without violating its statutory duty under Md.Ann.Code art. 49B and COMAR 14.03.02.05 to extend reasonable job accommodations to handicapped employees?

3. Did the Personnel Board and the Circuit Court err as a matter of law when they cast upon an employee the burden to demonstrate that his physical disability could be accommodated through reasonable effort or expense on the part of Anne Arundel County, rather than demand that the County first attempt to prove that it cannot so accommodate the employee?

4. Did the County act arbitrarily and capriciously in violation of *Montgomery County v. Anastasi*, 77 Md.App. 126, 549 A.2d 753 (1988) when it changed Gaither's classification in 1989 after having approved that classification in 1985 based upon the same facts?

5. Under Anne Arundel County Code, art. 8, § 1–205, may the County reduce the wages of an employee who is "reclassified" in position after a desk audit and not demoted for misconduct or other reasons of discipline?

(i)

In reviewing the Personnel Board's order upholding Gaither's demotion, we apply the substantial evidence test to determine whether there is "such relevant evidence as a reasonable mind might accept as adequate to support ... [the] conclusion" reached by the Board. *State Election Bd. v. Billhimer,* 314 Md. 46, 58, 548 A.2d 819 (1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989) (citations omitted); *see also, Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512, 390 A.2d 1119 (1978); *St. Leonard Shores Joint Venture v. Calvert County,* 307 Md. 441, 447, 514 A.2d 1215 (1986); *Hill v. Baltimore County,* 86 Md.App. 642, 659, 587 A.2d 1155 (1991). We may not substitute our judgment for the expertise of an administrative agency, such as the Personnel Board. *See Montgomery County v. Asbury Methodist Home, Inc.,* 313 Md. 614, 625–26, 547 A.2d 190 (1988); *Motor Vehicle Admin. v. Lindsay,* 309 Md. 557, 564, 525 A.2d 1051 (1987); *Maryland Comm'n on Human Relations v. Baltimore,* 86 Md.App. 167, 173, 586 A.2d 37 (1991). Furthermore, we "must review the agency's decision in the light most favorable to the agency, since 'decisions of administrative agencies are *prima facie* correct'" and "carry with them the presumption of validity." *Bullock,* 283 Md. at 513, 390 A.2d 1119 (citations omitted). We are not constrained, however, to affirm the Personnel Board's decision if it was premised on an erroneous conclusion of law. *Baltimore,* 86 Md.App. at 173, 586 A.2d 37.

■ Before we address the specific contentions raised by Gaither in this appeal, we recognize that the route for reviewing handicap discrimination cases is somewhat circular. To clarify our approach to this case then, we note that a claimant, like Gaither, has the initial burden of presenting a *prima facie* case. To present a *prima facie* case, Gaither must establish that he was handicapped, that he was physically able to perform the duties of a water plant operator, and that his demotion was based solely on his handicap. *See B & O Railroad Co. v. Bowen,* 60 Md.App. 299, 309,

482 A.2d 921 (1984); *Mass Transit Admin. v. Maryland Comm'n on Human Relations,* 68 Md.App. 703, 711, 515 A.2d 781 (1986), *cert. denied,* 308 Md. 382, 519 A.2d 1283 (1987); *Baltimore,* 86 Md.App. at 176, 586 A.2d 37; *see also Carty v. Carlin,* 623 F.Supp. 1181, 1184 (D.Md.1985) (under Federal Rehabilitation Act, "not all persons with disabilities are entitled to protection"). Being physically able to perform a job means that a claimant is otherwise qualified to perform the job—that is, "able to meet all the program's requirements in spite of his disability." *Baltimore,* 86 Md.App. at 174–75, 586 A.2d 37, *quoting School Board of Nassau County, Florida v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1130 n. 17, 94 L.Ed.2d 307 (1987).

■ Only after the claimant has presented his *prima facie* case does the burden shift "to the employer to establish that the handicap reasonably precludes the performance of the job." *Baltimore,* 86 Md.App. at 176, 586 A.2d 37. The employer may do this by showing that no accommodation is possible and by showing "to a reasonable probability that the complainant's physical handicap would create a future hazard to the health and safety of either the applicant or the public at large." *Mass Transit,* 68 Md.App. at 711–12, 515 A.2d 781; *see also Baltimore,* 86 Md.App. at 176–178, 586 A.2d 37; *B & O Railroad,* 60 Md.App. at 309, 482 A.2d 921. The employer may also defend by proving "that a certain characteristic in a particular job is a bona fide occupational qualification" and that "such a characteristic is reasonably necessary to the performance of the job." *B & O Railroad,* 60 Md.App. at 311, 482 A.2d 921; *see also Mass Transit,* 68 Md.App. at 713, 515 A.2d 781 (it is a valid defense to show that "the job qualification is a bona fide occupational qualification"); COMAR 14.03.02.05F(1) (employer may discriminate against handicapped persons "when mental and physical ability is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business").

(ii)

■ Gaither's first question for review focuses on his *prima facie* case, *i.e.*, his handicap and ability to perform the essential duties of a water plant operator.[2] Gaither and his witnesses asserted that he could do "anything he set his mind to." For this reason, the County claims he has not established that he was handicapped. The County's argument is meritless. The Workers' Compensation Commission found that Gaither's injuries in 1978 and in 1985 left him with a 15% permanent disability, the County treated him as disabled, and the Personnel Board accepted this finding. There is no indication in the record, nor do either of the parties contend, that the County demoted Gaither for any reason other than his inability to perform his job due to his handicap.

Having established that he is handicapped and that he was demoted solely on the basis of his handicap, Gaither still must prove the remaining prong of his *prima facie* case—that he was physically able to perform the duties of a water plant operator. A handicapped person need not be able to perform all the duties of the job at issue—rather, he must only be able to perform the essential duties of the job. *Baltimore*, 86 Md.App. at 178, 586 A.2d 37; *Carty*, 623

---

**2.** Gaither actually couches this first question by asking whether being able to lift 50 pound bags of lime is a bona fide occupational qualification. A bona fide occupational qualification (BFOQ) "exists only if no member of the class excluded is physically capable of performing the tasks required by the job." *See Evening Sentinel v. Nat'l Organization for Women*, 168 Conn. 26, 357 A.2d 498, 505 (1975). Maryland recognizes that "sex, age, religion, national origin or *physical or mental qualification*" may be a "bona fide occupational qualification reasonably necessary to the normal operation" of a particular business. Md.Ann.Code art. 49B, § 16(g)(1) (1991) (emphasis added). Being able to see, for example, would be a BFOQ for a bus driver position. On the other hand, the more appropriate inquiry when considering Gaither's inability to lift a 50 pound bag of lime is whether this is an essential *duty* of the job rather than whether it is bona fide occupational qualification. *See, e.g., Baltimore*, 86 Md.App. at 175–77, 586 A.2d 37 (discussing the essential functions of a police officer).

F.Supp. at 1186; *Jasany v. U.S. Postal Service,* 755 F.2d 1244, 1250 (6th Cir.1985).

■ Gaither argues that the Board and the trial court erred in concluding that being able to lift 50 pound bags of lime is an essential duty of a water plant operator. He contends that being able to lift 50 pounds is not an essential duty of the job and thus whether he is capable of performing such activity is irrelevant in this case. Gaither correctly notes that the Anne Arundel County Code, in defining the job qualifications for a water treatment plant operator, does not mention the necessity of being able to lift 50 pound bags of lime. *See* Anne Arundel County Code, art. 8, § 1–201(b). The Anne Arundel Code, however, does not mention *any* of the physical qualifications for a water plant operator. Rather, the Code only discusses the education and licensing requirements of an operator. *See id.*

■ In determining whether Gaither was able to perform the essential duties of a water plant operator, the Board consulted the county's job description for the position and found "that the regular duties [performed by Gaither] do not fit those responsibilities defined for Senior Water Plant Operator in the performance planning and evaluation description form." The performance planning and evaluation job description form does not expressly state that water plant operators must be capable of lifting 50 pound bags of lime; however, it lists the following critical elements of the job—elements that may entail lifting 50 pound bags of lime:

Analyzes operating data and make necessary adjustments ... to the operation/process to ensure the highest quality water possible....

Performs manual tasks related to plant operation such as water testing, backwashing filters, replenishing chemicals, etc. ...

Performs other work as required.

It was appropriate to review this job description form. *See e.g., Guinn v. Bolger,* 598 F.Supp. 196, 202 (D.D.C.1984) (it

is appropriate to look to the job description to determine the essential duties of a job).

Moreover, and perhaps even more significant, in addition to reviewing this job description, the Board heard extensive testimony regarding the physical duties of a water plant operator. The Board found that

The Senior Water Plant Operators who testified acknowledged that one of the primary requirements for the position was the ability to lift 50 pound bags of lime. The lime is lifted daily and carried into the various pumping stations. Nearly all of the witnesses conceded that they had not seen Appellant lifting any of the bags.

Several of the other witnesses who testified said that turning overhead valves was another physical requirement for the position of Senior Water Plant Operator. The valves are turned during the back wash procedure. Witnesses also testified that they had not seen the Appellant turning overhead valves.

Shortly before the demotion, Appellant's supervisor requested Appellant's own physician, Dr. Chang, to assess Appellant's ability to perform the duties of the Senior Water Plant Operator. Appellant's physician responded that Appellant would have difficulty completing the majority of the physical requirements of a Senior Water Plant Operator. Pursuant to Section 808 of the Anne Arundel County Charter, a permanent classified employee may be reduced in classification if "that ... employee is not physically capable of performing the work normal to the employee's classification...."

This Board finds that the County was permitted to demote the Appellant and that the highest position that he was qualified for because of his physical disabilities was maintenance worker. The evidence presented in the instant action clearly indicated at the time of the demotion he was unable to do the lifting of the lime bags, an essential component of the Senior Water Plant Operator position.

This Board can find no credence in Appellant's contention that because he was doing essentially the same job before the demotion as after, he could not be demoted. The evidence clearly shows that the Appellant since his 1978 accident was not fully performing the duties of a Senior Water Plant Operator. The County is permitted under the Charter to demote an employee who is not physically capable of performing the job.

The record is replete with evidence supporting these findings. Virtually all of Gaither's supervisors testified that Gaither was unable to perform essential physical duties of a water plant operator and that lifting of 50 pound bags of lime, turning overhead valves, and climbing ladders were such duties. With regard to lifting the 50 pound bags of lime, the only duty upon which Gaither focuses on his appeal, the supervisors testified that it "is required of" all water plant workers. This is so, it was explained, because even though there are 26 water plant operators, only during 40% of weekday hours do the operators work in pairs; at all other times, including nights and weekends, there is only one water plant operator at a specific plant and no second operator is available to assist with lifting. For this reason, lifting the 50 pound bags, as one supervisor testified, "is the key thing that the water plant operators have to do in the daily operations. It can't be done by anyone else."

Moreover, even the witnesses who testified on behalf of Gaither, including other water plant operators, acknowledged that lifting 50 pound bags was an essential duty of a water plant operator and Gaither was unable to perform that duty. Several of them specifically conceded that water treatment operators "have to be able to lift a 50 pound container ... climb ladders" and operate overhead valves and that after 1978 they had never seen Gaither lift 50 pound bags of lime or turn overhead valves. Several witnesses, including Gaither himself, acknowledged that Gaither's personal physician, Dr. Chang, had repeatedly recommended that Gaither be kept on light duty because of his inability to lift heavy objects and perform certain physical

duties of the water plant operator position. Finally, it was uncontroverted that on May 9, 1989, the County sent Dr. Chang a list of physical specifications—including lifting 50 pound bags—for the water plant operator position and asked him to assess whether Gaither could perform those specifications. In response, Dr. Chang replied that Gaither could not do four of the seven tasks and would have difficulty with two others. Specifically, Dr. Chang opined *inter alia* that Gaither (1) could not lift 50 pound bags of lime but could only "lift less than 25 pound bags a few at a time ... he cannot carry 25 pound bags up and down stairs or carry for a distance;" (2) could only occasionally climb ladders and (3) could not operate overhead valves.

Accordingly, the Board did not err in relying on the County's job description and the testimony at the hearing in determining that these were essential duties of the job, including lifting 50 pound bags of lime, that Gaither could not perform. *See Hall v. U.S. Postal Service,* 857 F.2d 1073, 1079 (6th Cir.1988) (a determination of the essential functions of a job depends on both the job description and the actual functioning and circumstances of the enterprise involved).

(iii)

■ Gaither's next two questions for review focus on the employer's duty to accommodate a handicapped employee. Gaither first argues that the County should not have been allowed to "abandon its ten year old job functions accommodation of Gaither's handicap." Gaither then contends that the burden of proving reasonable accommodation was erroneously placed on him instead of the County. We consider these two issues in reverse order.

■ After the Board determined that Gaither was unable to perform the essential duties of a water plant operator, the Board inquired into whether the County could have reasonably accommodated Gaither's handicap so that he would have been able to perform the essential duties of the job. Employers in Maryland must make a reasonable ac-

commodation for an employee's handicap so that he may successfully perform his job. *See Baltimore*, 86 Md.App. at 178, 586 A.2d 37; COMAR 14.03.02.05B(1). An accommodation is unreasonable if it imposes an undue hardship on the employer. COMAR 14.03.02.05B(1). Although the duty to accommodate rests on the employer, the burden of proving that an employer could not have reasonably accommodated a handicapped employee does not arise *until* the employee presents his *prima facie* case. *Baltimore*, 86 Md.App. at 178, 586 A.2d 37. *See Jasany*, 755 F.2d at 1249–51. As discussed earlier, crucial to an employee's *prima facie* case is the *employee* establishing that he is otherwise qualified to perform the essential functions of a job. *Baltimore*, 86 Md.App. at 176, 586 A.2d 37. Establishing that one is "otherwise qualified" for a job necessarily entails a consideration of whether one would be qualified if his handicap were accommodated by the employer. *Id.* at 174, 586 A.2d 37. Only after "a *prima facie* case has been presented, [does] the burden shift[ ] to the . . . employer to demonstrate . . . that reasonable accommodation is not possible." *Jasany*, 755 F.2d at 1249–50. It was precisely because the administrative agencies misunderstood this that we affirmed the trial court's reversal of the administrative decision in *Baltimore:*

> The hearing examiner and the Appeal Board misconstrue *B & O v. Bowen, supra,* in deciding that the burden of establishing that Mrs. Thuman [the handicapped employee] could not be accommodated was on the appellee [the employer], for the reason that she [the employee] never established a *prima facie* case of discrimination which required her to show she could perform the essential duties of a police officer.

86 Md.App. at 178, 586 A.2d 37.

In *Jasany, supra,* an employee similarly failed to establish his *prima facie* case. *Jasany*, 755 F.2d at 1250. In considering the employee's assertion that he could have performed the essential duties of the job with accommodation, the Sixth Circuit repeatedly looked to the *employee* to

present evidence to support this contention. The court noted that "Jasany [the employee] offered no evidence that [a curtailed schedule of his hours] would have alleviated his symptoms." *Id.* at 1251. Furthermore, the court recognized that Jasany's contention that he could have been reassigned to another position was nothing more than an effort to confuse the employer's duty to accommodate with the employee's burden of proving that he could perform the essential duties of the job. *Id.*

Gaither concedes that he "is required to establish a *prima facie* case of handicap discrimination" before the employer has "a duty to show that the handicap could not be accommodated." He argues that the burden of proving reasonable accommodation was improperly shifted to him. Although he is correct that the County bears the burden of proving that it could not reasonably accommodate him *when* he has presented a *prima facie* case, *see Hall,* 857 F.2d at 1080, Gaither incorrectly maintains that he has "established" a *prima facie* case. If we were to require the County at this stage to prove that it could not have reasonably accommodated Gaither, we would, in essence, be requiring *the County* to prove that Gaither was not qualified to perform the job with reasonable accommodation. This would violate the whole notion of requiring the *employee* to present a *prima facie* case. Thus, while a "court must ... consider whether any 'reasonable accommodation' by the employer would enable the handicapped person to perform those [essential] functions" of the job, *Arline,* 480 U.S. at 287, n. 17, 107 S.Ct. at 1130 n. 17, the employer will not bear the burden of proof until the employee presents a *prima facie* case.

In this case, Gaither testified that he could have done the job with a slight amount of accommodation. He put forth some suggestions for accommodation; for example, he argued that two water plant operators could carry the 50 pound bags of lime together or that 25 pound bags of lime could be ordered. The Board found:

[t]here was no credible evidence presented that the County could have purchased smaller bags of lime.... In addition, ... to permit two men to carry the 50 pound bags of lime would have disrupted the work load of an entire shift.

Again, the evidence amply supports the Board's finding. Gaither's supervisor testified that on many shifts there was only one water plant operator; on these shifts no second operator was available to assist with lifting. Moreover, not only did Gaither introduce no evidence as to the feasibility of 25 pound bags but his own physician, Dr. Chang, opined that Gaither could only lift *"less than 25 pound bags,* a few at a time ... he cannot carry 25 pound bags up and down stairs or carry for a distance." (emphasis added). Accordingly, if the County had been able to secure 25 pound bags with equal ease and cost, Gaither's own physician indicated that this would not have helped him. Thus, Gaither failed to prove his *prima facie* case, *i.e.* that even with accommodation, he could perform the essential duties of a water plant operator, and the Board did not err in requiring him to do this.

### (iv)

Gaither's related argument on accommodation is that the County should not have been permitted to "summarily abandon its ten year old job functions accommodation" of his handicap. Gaither was initially injured in a job related accident in 1978 and was injured again in a job related accident (involving handling a heavy cylinder) in 1985. Since his 1978 accident, Gaither has been on "light duty." On the job analysis questionnaire that Gaither himself completed in response to the 1988 desk audit of his "light duty" position, he stated that the main purpose of this "light duty" job was "to maintain the shop and supply room at Dorsey Road WTP." Gaither then detailed the various duties that he performed, *e.g.* "issues parts and equipment," "monitors and reports to supervisor the use of parts," "maintains shop, washroom and operator's room in

orderly way," etc. According to numerous witnesses at the Board hearing, these duties were primarily, although not exclusively, those of a maintenance worker; even Gaither's witnesses conceded that they were not the duties of a water plant operator.[3] Gaither argues that the County, in effect, accommodated his handicap by allowing him to perform these light duty activities (and requiring other employees to perform the water plant operator duties that he could not perform) and the County should not now be allowed to change its practices by demoting him to a lower grade position.

Gaither assumes that the County's willingness to keep him on light duty for over 10 years created a duty in the County to continue this practice. In fact, the County charter provides:

> A permanent classified employee may be suspended, *reduced in classification*, or removed by the appointing authority ... [if] the employee is not physically capable of performing the work normal to the employee's classification ...

Anne Arundel County Charter, § 808 (emphasis added). As the Board noted:

> Counsel for appellant did not produce authority and this Board is aware of none, which requires the County to keep an employee in a position he can no longer physically perform.

---

**3.** Thus, Gaither's repeated assertion that, since the County's ten year "accommodation" of him did not require him to carry 50 pound bags of lime or turn overhead valves these are not essential duties of a water plant operator, misses the mark. It was precisely because while on "light duty" Gaither was *not* performing the duties of a water plant operator (as even his witnesses conceded) that the County experienced scheduling problems that made the demotion necessary. During his 10 years on "light duty," Gaither, like other County employees, was given an annual evaluation; although in those evaluations Gaither was given uniformly good reviews, it was frequently noted that Gaither was no longer performing many of the duties of a water plant operator and so could not be evaluated as to his performance of those duties.

Moreover, the County had no stated policy regarding the assignment of its employees to light duty.[4] Nor did the County, according to the Regional Manager of Water Operations, have a policy regarding how long an employee could be kept on light duty.

That the County permitted Gaither to work light duty at his water plant operator pay grade for more than 10 years seems to be the sort of understanding treatment of a valued employee that should be encouraged, rather than penalized. This is particularly so because it is undisputed that the County's decision no longer to permit Gaither to perform light duty non-water plant operator duties was motivated by legitimate general County scheduling difficulties and not animus toward Gaither. The County's ultimate decision to demote Gaither from a position that he could not perform to one in which he could is not only within the County's authority but is also a viable means of accommodating Gaither's handicap. *Compare Rhone v. U.S. Army,* 665

---

4. Had the County had such a policy, the County *may,* in discharging its duty to accommodate, have been obligated to offer a handicapped employee such a position. *See, e.g., Baltimore,* 86 Md.App. at 178, 586 A.2d 37 (implies that had employer ever established a light duty position for police officers, employer may be obligated to offer such a position to handicapped police officer); *Carter v. Tisch,* 822 F.2d 465, 467 (4th Cir.1987) (employer had no duty to provide alternative employment for handicapped employee, unless employer normally provides such alternative); *Davis v. Meese,* 692 F.Supp. 505, 519 (E.D.Pa.1988), *aff'd,* 865 F.2d 592 (3rd Cir.1989) (if employer has a limited duty assignment, then requiring employer to place employee in such a position would not constitute an undue hardship on employer in accommodating employee); *Davis v. U.S. Postal Service,* 675 F.Supp. 225, 235 (M.D.Pa.1987) (employer cannot deny employee alternative employment reasonably available under employer's existing policies); *Bento v. I.T.O. Corp.,* 599 F.Supp. 731, 745 (D.R.I.1984) (had employer as a general rule ever singled out any other employees for light duty, employer would have been obligated to give employee light duty position). These cases do not, however, stand for the proposition that once an employer assigns an employee to light duty, the employer must keep the employee in such a position. *Compare, Coffman v. West Virginia Board of Regents,* 182 W.Va. 73, 386 S.E.2d 1, 2–3 (1988) (no discrimination when handicapped employee was given light duty accommodation and then terminated when no other position was found for him).

F.Supp. 734, 737 (E.D.Mo.1987) (when personnel office determined there were too many light duty positions, employees previously assigned to light duty position could be placed in a position at same or lower grade); *Mowrey v. Iowa Civil Rights Comm'n,* 424 N.W.2d 764, 768 (Iowa Ct.App.1988) (employer reasonably accommodated employee by placing him in position with reduced rate of pay); *Fischhaber v. General Motors Corp.,* 174 Mich.App. 450, 436 N.W.2d 386, 388–89 (1988) (employer gave employee choice between demotion or termination; demotion to an hourly position was not discriminatory).

It is not, however, the only means by which the County accommodated Gaither's handicap. The County, in fact, proved that it offered Gaither numerous additional accommodations consistent with Maryland law on the "reasonable accommodation" of handicapped workers. *See* COMAR 14.-03.02.05B. The County adopted fair, reasonable physical standards for water plant operators "adapted to the actual requirements of ... employment." *See* COMAR 14.03.02.-05B(2)(c). These were used in evaluating not only Gaither's ability to do the job but that of all other water operators. Thus, the physical standards were not used "to arbitrarily eliminate" him from consideration. *Id.* The County engaged in a "re-analysis" of the job specifications to "fully consider" Gaither's needs. *See* COMAR 14.03.02.05B(2)(a). Moreover, after this analysis was initiated, Gaither's supervisor offered him a transfer to a water plant operator position at the Arnold plant because in this southern Anne Arundel County facility the physical requirements were less onerous than in other plants. Gaither refused this offer because of "extra travelling." Instead, Gaither indicated that "he felt that he could physically perform the duties of a water plant operator in the northern region." His supervisors then agreed to draw up a list of physical duties of the job and send that list to Gaither's *own* physician to determine if Gaither could perform those duties or could undergo work hardening training to enable him to complete these duties. *See* COMAR 14.03.02.05B(2)(e) (reasonable accom-

modation includes occupational training programs.) Only after Gaither's physician, Dr. Chang, unequivocally opined that Gaither could *not* perform most of these physical duties did the County determine that Gaither was not medically released for work hardening and would have to be transferred to another position.

Even then the County permitted Gaither 60 days to search for a new county position and provided him with advice as to how to obtain new positions of a comparable, or almost comparable, pay grade to the water plant operator position. The County provided Gaither with information on vacancies as, *inter alia,* a Laboratory Technician, Utilities Maintenance Crew Leader, and Utility Systems Technician II and information on how to apply for these positions. Gaither failed to follow up on any of these positions. It was only then that he was demoted.

All of this evidence supports the Board's finding that even if the County did have the burden of proving it reasonably accommodated Gaither and did not "summarily abandon" its 10 year "accommodation" to him, it met this burden:

> Notwithstanding, this Board finds that the County did make serious efforts to accommodate the Appellant by offering him a position as a Senior Water Plant Operator at the Arnold station which requires less physical activity than the other plants. Appellant expressed no interest in transferring to the Arnold station.

The cases upon which Gaither relies do not support a contrary conclusion. First, although, as Gaither points out, federal case law is generally useful in interpreting "Maryland Handicap Law," *see e.g., Mass Transit, supra,* 68 Md.App. at 716, 515 A.2d 781, the federal cases upon which Gaither relies involve interpretations of federal statutes and regulations to which there is no Maryland analogue. *See e.g. Hall,* 857 F.2d 1073; *Davis v. Frank,* 711 F.Supp. 447 (N.D.Ill.1989) (both interpreting the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 and 794, which imposes an *"affirmative"* duty on federal agencies or those receiving federal

monies to structure their programs to ensure handicapped persons equal opportunities that goes beyond the obligation not to discriminate and 29 C.F.R. § 1613.704(b) (1987) which provides "reasonable accommodation may include but shall not be limited to ... *a job restructuring.*") Thus, they are hardly authoritative in the situation at hand. Furthermore, even under the far more vigorous federal standards, it is well established, as these cases acknowledge, that an employer "is not required to accommodate a handicapped individual by eliminating one of the essential functions of the job." *Hall,* 857 F.2d at 1078. Here the only "accommodation" Gaither was willing to accept ("light duty") required elimination of essential functions of the job.

Moreover, although the courts in these cases found in favor of a handicapped employee, the facts of each are so different from those at hand that they provide little support for Gaither. *See, e.g., Hall,* 857 F.2d at 1079 (reversal of summary judgment for employer because genuine issue of material fact as to whether employee could perform essential functions of position and whether reasonable accommodation by employer would enable here to perform those functions); *Perez v. Philadelphia Housing Authority,* 677 F.Supp. 357 (E.D.Pa.1987), *aff'd,* 841 F.2d 1120 (3rd Cir. 1988) (uncontroverted evidence was that employee who had injured her back, on return to work, requested and was denied, a straight chair, use of the elevator and regular breaks, and so was forced to take involuntary leave and after several months on leave, was summarily and without notice, terminated); *Iowa Beer & Liquor Control Dept. Store 1023 v. Iowa Civil Rights Comm'n,* 337 N.W.2d 896 (Iowa Ct.App.1983) (when other store employees performing same functions at same time could do heavy lifting, store could accommodate one employee who could not do heavy lifting). This is particularly so because it is well recognized that determination of whether "legitimate physical qualifications may be essential to the performance of certain jobs" and "determination of whether accommodation is possible are *fact-specific issues." Hall,* 857 F.2d at 1079 *quoting*

*Arline v. School Board of Nassau County,* 772 F.2d 759, 764–65 (11th Cir.1985) *aff'd,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (emphasis supplied by *Hall* court.) Here the Board carefully reviewed the facts and made numerous findings on these "fact specific issues"; those findings are supported by substantial evidence. Accordingly, even if the County did have the burden of proving it reasonably accommodated Gaither, the Board's finding that it met this burden was supported by substantial evidence.

(v)

■ Gaither also contends that the County acted arbitrarily and capriciously when it changed Gaither's classification in 1989 after having approved his classification in 1985. Gaither argues that *Montgomery County v. Anastasi,* 77 Md.App. 126, 549 A.2d 753 (1988) is controlling. In *Anastasi,* we were called upon to address the "issue of whether an alleged deviation of an administrative agency from the agency's prior decisions constitutes an arbitrary and capricious act under" Maryland's Administrative Procedures Act. *Id.* at 137, 549 A.2d 753. We concluded that when the issue in the case at hand is indistinguishable from the very issue previously decided, the agency may not change its position unless it articulates a reasoned analysis for doing so. *Id.* at 137–138, 549 A.2d 753.

Here, unlike *Anastasi,* the administrative appeal is not predicated on Maryland's Administrative Procedures Act and, even if it was, Gaither's argument that the Board acted in an arbitrary and capricious manner is unpersuasive. First, the evidence presented by Gaither on this point, *i.e.,* a 1985 memo from the Personnel Department to Gaither regarding reclassification and sparse references to a 1984 reclassification in testimony at the Board hearing, is woefully inadequate. The memo, without any explanation, states that "[b]ased on a review on [sic] the duties and responsibilities of [Gaither's] position, it has been determined that [Gaither] should be classified" as a water plant operator. The testimony was that of John Magnum, a senior water

treatment operator, who stated that in 1984 there was a countywide reclassification in reaction to recommendations from a big consulting firm which resulted in "mass confusion." He could not recall what arguments were made on behalf of Gaither but noted "it was not specifically special to Mr. Gaither." Rather, it was a "mass appeal." He and the union representative:

> presented all of the appeals for 95 percent of the employees; and, in Mr. Gaither's case, we presented a straight appeal to the Personnel Board, explained Mr. Gaither's position, what Mr. Gaither did, and it was very brief. Decision came back from the Board.

The sparseness of the evidence Gaither presented as to what transpired at the time of the 1984–1985 reclassification in and of itself provides a basis for rejecting his argument. In *Eaton v. Rosewood Center*, 86 Md.App. 366, 586 A.2d 804 (1991), we considered a similar challenge involving a claim that the Secretary of the Department of Personnel had acted in an arbitrary and capricious manner. The designee of the Secretary determined that reinstatement of an employee who had been suspended because of complaints of patient abuse was appropriate; the Secretary overruled that decision. According to appellant, never before had the Secretary intervened in a similar case and therefore her intervention in this case was an unexplained deviation from established procedure. *Id.* at 374. We were not persuaded by this argument for several reasons, "not the least of which [was] the fact that the record [was] devoid of any evidence" concerning the Secretary's prior treatment of her designee's decisions. *Id.* at 375, 586 A.2d 804.

Moreover, the facts that we do know from the sparse record produced by Gaither indicate that the 1984–85 reclassification was very different from the 1989 reclassification. The earlier reclassification, unlike that in 1989, involved no specific desk audit, employee inquiry, or physician inquiry. The 1984–85 reclassification was a countywide reclassification that engendered, in the words of Gaither's witness,

"mass confusion" and a "mass appeal" with no specific attention to Gaither or whether he was performing the duties of a water plant operator. The earlier reclassification was apparently initiated and justified as a means to simplify the County system rather than to deal with the specific scheduling problems of the utilities department. From these facts, it can hardly be concluded that the Board acted arbitrarily in reaching a different conclusion in 1989 than it had in 1984–85.

## (vi)

██ Gaither's final argument is that the Board erred because the Anne Arundel County Code does not permit the County to reduce an employee's pay upon reclassification. This argument was not made before the Board or in the lower court and so is not properly preserved for appeal. *See* Md. Rule 8–131.

██ Moreover, the argument is meritless. It is true that the County Code does not permit the County to reduce an employee's pay because his class of work is reclassified. Anne Arundel County Code, art. 8, § 1–205(d)(2). It is also true that Gaither's position as water plant operator was reclassified to utilities maintenance worker. It was not, however, the County's reclassification of Gaither's class of work that caused Gaither to receive less pay. Rather, Gaither was demoted, after a desk audit of his job, because he was not physically capable of performing the work normal to his classification. Only after this demotion was made was his position reclassified.

We note that the Anne Arundel County Code provides, in pertinent part:

[A] demotion may not result in a salary decrease of more than 15%....

If an employee's class of work is reclassified to a lower grade, the employee's new salary shall be at a rate that is closest to and not lower than the rate at which the employee was paid in the former grade.

**594**

Anne Arundel County Code, art. 8, § 1–205(c) and (d). In the June 12, 1989 letter from the County to Gaither informing Gaither of the results of the desk audit, Ms. Hirtle, a personnel analyst, explained that, if Gaither were not successful in locating another county position, Gaither could request a voluntary "demotion" to the position of utilities maintenance worker. She also explained that his salary would be reduced no more than 15%. On August 11, 1989, Gaither requested a "demotion" and acknowledged that he understood that his salary would be reduced by approximately 15%. Given this correspondence and the testimony given at the Board hearing, the Board did not err in concluding that Gaither was demoted and that his position was not simply reclassified.

JUDGMENT AFFIRMED.

APPELLANT TO PAY COSTS.